[No. 4762.]

## RAMSAY v. MEADE.

**1.  Contracts—Partnership—Personal Services.**

The owner of a stock of merchandise entered into a contract
with another, whereby the latter was to buy an interest in the
stock and was to receive a salary in addition to a certain per
cent. of the net profits derived from the sale of such stock. Held,
that though there was no clause in the contract saying that
either party was to bear the losses, in the absence of evidence to
the contrary, the law presumes that losses were to be borne in
the same proportion in which they shared in the profits; and that
these and other elements of a partnership contract existing, and
the clear intention of the parties being to form a partnership,
the contract concerned, and, when consummated, gave rise to, a
partnership.—P. 470.

**2.  Pleading—Complaint—Variance—Waiver.**

Although a complaint may be uncertain as to whether the
plaintiff seeks damages for defendant's breach of an executory
contract to form a partnership, or for his violation of the terms
of one consummated, the defendant waives such defect by an-
swering over, after his demurrer on that specific ground has
been overruled.—P. 471.

**3.  Pleading—Complaint—Two Causes of Action in One State-
ment—Evidence. Supporting One—Variance Waived—Ver-
dict Not Set Aside.**

Although commingled in one statement are the essential
elements of two causes of action, if the evidence supports either,
and the complaint states a cause of action, a judgment or ver-
dict cannot be set aside on the ground of an alleged variance
which the defendant has waived.—P. 471.

30

4.  Pleading — Complaint — Action Not Named — Partnership —
    Breach of Contract—Measure of Damages.

Where a complaint states, but does not name, a cause of
action, and the facts are stated as the code requires, it is im-
material whether the cause of action is for the breach of an
executory contract to form a partnership or one for the violation
of the terms of an existing one, as the measure of damages is the
same in both cases, being the probable profits which plaintiff
would have earned had not defendant wrongfully prevented its
performance.—P. 471.

5.  Partnership—Breach of Contract—Measure of Damages—Evi-
    dence.

Where the sole object of a partnership business is the ac-
cumulation of profits, the measure of damages for a breach of
the partnership is the profits which would have accrued to the
plaintiff had not the partnership been wrongfully dissolved; and
evidence of past profits in the same business, of the prosperity
and growth of the community during the term of the partnership,
and of the ability and skill of the plaintiff, is.admissible as bear-
ing on the question of damages; and while it is impossible with
absolute certainty to say whether any business will be profitable
in the future, if the evidence tends to show with reasonable
certainty that profits would be made, they may be recovered,
though the amount is uncertain, but merely speculative or re-
mote profits cannot be recovered.—P. 473.

6.  Practice in Civil Actions—Partnership—Breach of Contract—
    Instructions—Non-direction—Failure to Tender.

In an action for damages for a breach of a partnership con-
tract, a failure of the court to properly define "probable profits,"
in the absence of a tender of such instruction or one limiting
the range of the jury's inquiry, is not reversible error.—P. 474.

7.  Practice in Civil Actions—Partnership—Breach of Contract
    —Instructions Read as a Whole.

Where, in an action for damages for a breach of a partner-
ship contract, the court instructed the jury that if the alleged
representations of the plaintiff, or any of them, were false and
untrue, the defendant would be justified in revoking the con-
tract, another instruction that defendant must establish the truth
of the allegations of his affirmative defenses of incompetency and
plaintiff's fraudulent representation whereby defendant was in-
duced to make the contract, was not misleading as imposing on
defendant the burden of proving all such averments, as the in-
structions must be read as a whole.—P. 474.

8.   Practice in Civil Actions—Affirmative Defenses—Mitigation
        of Damages.

   Mitigation of damages is an affirmative defense, and must be
specially pleaded.—P. 475.

9.   Partnership—Breach of Contract—Measure of Damages.

   Where, in an action for damages for a breach of partnership
contract, the evidence of both plaintiff and defendant shows that
one-third of the profits was intended by the parties to be solely
as profits and as compensation to the plaintiff by way of return
for his investment in the firm business, no part of such profits
can be treated as additional compensation for plaintiff's services
to the firm.—P. 476.

*Appeal from the District Court of Weld County.*
*Hon. Christian A. Bennett, Judge.*

*On Rehearing.*

   Action by David R. Meade against Charles H.
Ramsay. From a judgment for plaintiff, defendant
appeals. Original opinion withdrawn. *Affirmed.*

   Mr. H. E. CHURCHILL (Mr. PAUL W. LEE and
Mr. JOSEPH C. EWING, of counsel), for appellant.

   Messrs. ROGERS, SHAFROTH & GREGG and Mr. H.
M. HAYNES, for appellee.

   This is an action by the appellee Meade, as
plaintiff below, against the appellant Ramsay, de-
fendant below, to recover damages for the breach of
a contract relating to a partnership. There was a
judgment for plaintiff in the sum of $5666.66, from
which defendant appealed. This is the contract:

   "This Agreement, made this 9th day of June,
A. D. 1902, by and between C. H. Ramsay, party of
the first part, and D. R. Meade, party of the second
part,

   "Whereby said Meade takes an interest in the
dry goods stock belonging to said Ramsay, and situ-
ated in the city of Greeley, Colorado, to the amount

of five thousand dollars, to be paid for by endorsing said amount of the capital stock of The Bray Clothing Company, of Louisville, Kentucky, to said C. H. Ramsay, at a guaranteed ten per cent. or five hundred dollars guaranteed dividend for said year 1902. Said stock of goods is to be invoiced by said Ramsay between July 15th and August 1st, 1902, at cost, without adding any freight, except damaged or unsalable stuff, which is to be inventoried at actual value.

"Said stock is to be then turned over to the said D. R. Meade, as manager, and the firm to be known as Ramsay & Meade, and said Meade is to receive a salary of eighty-five dollars per month as manager, said amount to be paid by the firm, and to receive in addition one-third of the net profits for five months of the year 1902, and full year of 1903.

"A set of books are to be kept by said manager, showing in detail all debits and credits as received and disbursed by him, and render a weekly statement to said Ramsay showing daily transactions of said business, and to remit once a week almost all the cash on hand to said Ramsay, who receives said money and uses same in paying for goods bought.

"Said manager is expected to use firm money from time to time in settling local bills, such as freight bills, clerk hire, rent, etc., making correct entries to correspond on his books, and is to receive credit for the firm of C. H. Ramsay on his books, where he is to keep a correct record of the firm's transactions.

"Said Ramsay is not expected to devote any of his time to the store as salesman, but agrees to assist in any and all ways by advising with said manager, and to do the buying, such as is necessary, by visiting the markets East.

"It is further agreed that, at the beginning of the year 1904, said Meade may become a half owner of said stock by satisfactory arrangement with said Ramsay, whereby he can share equally in the profits in addition to the salary, from that time on."

Contemporaneously therewith, and as a part of the partnership agreement, Meade was given until January 1, 1903, to deliver to Ramsay The Bray Clothing Company capital stock.

The complaint alleges that, on the 17th of July, 1902, with defendant's consent, plaintiff entered upon the performance of his duties as a copartner and manager of the partnership firm of Ramsay & Meade, as provided for in this contract, and continued so to act until the 22d day of the same month, when defendant wrongfully ejected him from the store and refused to allow him to perform the contract, by reason of which wrongful conduct plaintiff suffered damages in the sum of ten thousand dollars, for which he asks judgment.

To the complaint, the defendant demurred, on the grounds that it did not state facts sufficient to constitute a cause of action, and was ambiguous and uncertain, in that it was doubtful whether it averred a breach of an executory contract to form a copartnership, or an executed contract of copartnership then existing. The demurrer was overruled, and defendant answered, admitting the execution of the contract, but denying that the partnership contemplated therein had ever been launched, or that the plaintiff had entered upon the discharge of his duties thereunder. Defendant also denies that he wrongfully prevented plaintiff from carrying out his part of the contract, but admits that he obstructed him in that respect because of plaintiff's incompetency, and his fraud and misrepresentation, whereby defendant was induced to enter into the contract.

The replication denies the affirmative defenses of the answer.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

We are satisfied that justice demands an affirmance of the judgment. If the rules of appellate practice were rigidly enforced against appellant, it is doubtful if he could, as a matter of strict right, ask this court to consider and pass upon any of the objections urged against the judgment, but some of them, perhaps, should be considered and definitely determined.

We observe, first, that this contract is not merely one of personal service, though provision is made therein for a salary to Meade for managing the firm business. Taken as a whole, the contract, if executed, created a partnership. There was a community of interest in the subject-matter of the contract, namely, the stock of merchandise. The parties were to share, in a certain proportion, at least a part of the profits strictly as partners and as profits. Though there is no clause in the contract saying that either party was to bear the losses, in the absence of evidence to the contrary, the law presumes that losses were to be borne by them in the same proportion in which they shared the profits. —Lee v. Cravens, 9 Colo. App. 273-288. These and other elements of a partnership contract existing, and the clear intention of the parties being to form a partnership, we hold that the contract concerned, and, when consummated, gave rise to, a partnership. Such being our conclusion, we are better prepared to discuss the various objections of defendant to the rulings of the trial court.

Except in one particular which will hereafter be noted, in which contention there is no merit, defend-

ant does not deny that the affirmative defenses of
the answer alleging plaintiff's incompetency and
fraudulent conduct were properly submitted to the
jury upon conflicting evidence. The jury having
thus found against the defendant upon these issues,
we proceed with our discussion, assuming it to be
proved that the defendant wrongfully prevented
plaintiff from carrying out the contract.

Defendant's contention that the court should
have granted his nonsuit at the close of plaintiff's
evidence because there was a variance between the
proof and the allegations of the complaint, is with-
out merit. If it be true, as defendant says, that the
complaint is uncertain as to whether the plaintiff
seeks damages for defendant's breach of an execu-
tory contract to form a partnership, or for his viola-
tion of the terms of one consummated, certainly the
defendant waived such defect by answering over
after the court overruled his demurrer based upon
that specific ground. Indeed, in his brief, defendant
admits that the complaint states a cause of action
upon either theory. If commingled in one statement
are the essential elements of two causes of action,
if the evidence supports either, a judgment or ver-
dict cannot be set aside on the ground of an alleged
variance which the defendant has waived.

The complaint does not designate by name the
cause of action which it contains. The facts consti-
tuting it are stated, as the Code of Civil Procedure
requires. The defendant conceded below, and does
here, that a cause of action is pleaded. It seems
to us immaterial, therefore, whether the cause of
action is for the breach of an executory contract to
form a copartnership, or one for the violation of the
terms of an existing one. If defendant, as the com-
plaint charges, and as the jury found, wrongfully
refused to allow the plaintiff to carry out the written

contract, the plaintiff is entitled to damages, one element, if not the sole measure of which is, the probable profits which plaintiff would have earned had not the defendant wrongfully prevented its performance. Though a cause of action for the breach of such executory contract is in law entirely distinct and different from a cause of action based upon the breach of an executed contract of copartnership, still, the measure of damages is the same in both cases, and the cause of action accrues as soon as a breach occurs.

Appellant's objection, therefore, to the instruction of the court that, if the defendant refused to carry out the partnership agreement, plaintiff was entitled to damages, is not well taken, even though the court improperly assumed that the agreement of partnership was executed by the launching of the same. But, if it were necessary, we would hold that, under the evidence, the partnership contemplated by the written contract was launched at the time defendant prevented the plaintiff from carrying it out. The answer itself admits that the preliminary, or preparatory inventory was completed on the 17th day of July, upon which day the plaintiff says the firm business was begun. The evidence sustains plaintiff's allegation with respect to that matter. He was admitted into the store room where the business was carried on, was introduced by Ramsay as his partner and manager of the firm business, the firm name was given out to the public, and to various persons the defendant announced that the firm business was going. The defendant authorized the firm account to be opened with a bank, and deposits of the firm's money were made therein by the plaintiff for several days, and the firm business was carried on under the management of the plaintiff, to the knowledge of the defendant, in all respects as though the con-

tract of partnership had been executed. But whether the contract was executory, or executed, the measure of plaintiff's damages is the same.

The court instructed the jury that if, under the facts and principles of law which had been given them, they believed plaintiff suffered any damages, he was entitled to recover the probable profits which he would have made as a copartner in the firm of Ramsay & Meade during its existence had he been permitted to carry it out according to its terms.

Where, as here, the sole object of the business in question is the accumulation of profits, we think that a proper element of damages is the profits which would have accrued to the plaintiff had not the partnership been wrongfully dissolved. The evidence as to past profits in the same business is competent upon this issue. So, also, is evidence concerning the prosperity and growth of the community during the term of the partnership, and the ability and skill of the plaintiff.—*Lavens v. Lieb,* 42 N. Y. App. 901. While it is impossible, with absolute certainty, to say whether any given business will be profitable in the future, if the evidence tends to show with reasonable certainty that profits would be made, they may be recovered, though the amount is uncertain. Merely speculative or conjectural or remote profits cannot be recovered. Some of the authorities are: *Bagley v. Smith,* 10 N. Y. 489; *Griffin v. Colver,* 16 N. Y. 489; *Wakeman v. Wheeler & Wilson Mfg. Co.,* supra; *Reed v. McConnell, supra; Carrick v. Hannaman,* 168 U. S. 328; *Dennis v. Maxfield,* 10 Allen 138; *Rockwell, etc., v. Castroni,* 6 Colo. App. 521; *Treat v. Hiles,* 81 Wis. 280; *Jones v. Nathrop,* 7 Colo. 1; *Goldhammer v. Dyer,* 7 Colo. App. 29; 1 Sedgwick on Damages (6th ed.), pp. 103, 104; *Allison v. Chandler,* 11 Mich. 542; 8 Am. & Eng.

Enc. Law (2d ed.), pp. 620, 622, 632; *Rio Grande Western Ry. Co. v. Rubenstein,* 5 Colo. App. 121.

It may be true, as appellant says, that "probable profits" were not defined, and that this instruction did not sufficiently, or with the requisite fullness, advise the jury in determining the amount thereof. But the judgment should not be reversed merely because of this non-direction, since defendant did not tender an instruction defining "probable profits," or limiting the range of the jury's inquiry.

The defendant complains that, in one of the instructions, the court told the jury that defendant must establish the truth of the allegations of his affirmative defenses of incompetency and plaintiff's fraudulent representations whereby defendant was induced to make the contract. The vice in this instruction is said to be that thereby the court imposed upon defendant the burden of proving all of those averments, whereas, if he proved any one of them, the plaintiff could not recover. We do not believe the instruction is susceptible of this interpretation, and are satisfied that the jury was not misled. The instructions must be read as a whole; and, at defendant's request, the court gave another instruction, in which the jury were told that, if the alleged representations of the plaintiff, or any of them, were false and untrue, the defendant would be justified in revoking the contract.

Up to this point, the original is substantially the same as this opinion. For the reasons given in the former, we concluded that the judgment should be reversed upon three grounds: (1) Because of the admission of improper evidence; (2) failure of the court properly to instruct on mitigation, and neglect of the jury to make the proper award, of damages; (3) error of the court in construing the contract.

Plaintiff's petition for rehearing, and his supporting brief, and our further examination of the record, satisfy us that, in each of these particulars, we were mistaken. At the trial, the court admitted evidence of some merchants of the city of Greeley which seemed, upon first examination, of an objectionable character in that it was merely opinion evidence. But, if it was, it is doubtful if proper objection to its admission was made by defendant, and, in any event, he had not preserved his exceptions or assigned error upon the court's rulings, as our rules require. This noncompliance by defendant with the established practice was referred to in the former opinion, but we concluded, from some irregularities in the trial, to which we thought both parties contributed, that it comported with justice, of our own motion to pass upon the point omitted from the assignments. But, as to this, as well as in the other two points, we now think we erred.

The defendant did not plead mitigation of damages. This is an affirmative defense, and should have been pleaded. An instruction of the court seemed to indicate that, notwithstanding such omission, some evidence was heard concerning mitigation. If there was such evidence, as to which there might be some difference of opinion, the record does not show that the court wrongly instructed with relation to it, or that the jury misapplied the evidence, or failed to make proper credit therefor in arriving at their verdict. Prejudicial error must be shown by an appellant to obtain a reversal, and we are not satisfied that he has done so in this particular.

As plaintiff's contribution to the capital of the partnership was only $5,000—the same being only about one-fifth of the entire capital—and the articles of agreement provided that, in addition to the salary of $85 per month, plaintiff was to receive one-third

of the net profits, we said that, in the absence of any evidence to the contrary, it was a fair construction to hold that at least a portion of the one-third of the profits was, by way of additional compensation, for plaintiff's services as the manager of the firm business. The plaintiff, in his brief on re-hearing, vigorously attacks the soundness of this holding, and we are not prepared to say that his position is not right. Be that as it may, both the testimony of plaintiff and defendant shows that one-third of the profits was intended by the parties to be solely as profits, and as compensation to the plaintiff by way of return for his investment in the firm business. Such being the interpretation which the parties themselves put upon the contract, we are not, of course, at liberty to make a different contract for them.

In view of these considerations, we see no reason for reversing the judgment for the purpose of giving to the parties another opportunity to show the precise amount of damages which plaintiff suffered. We further add that we cannot say, as the result of our examination of the record, to which we have given an unusual amount of time and diligent attention, that any substantial error was committed by the court or jury; but, if so, it is defendant's fault, rather than that of plaintiff. The original opinion is withdrawn, and this is substituted therefor.

The judgment should be affirmed. *Affirmed.*

Chief Justice Gabbert and Mr. Justice Steele concur.