[No. 4815.]

## L. Baldwin & Company et al. v. Patrick, Admr., etc.

1. **Contracts—Sales—Performance—Referee—Evidence.**

Plaintiff had contracted with a third person to buy certain cattle, but, not being financially able to carry out the contract, he made an arrangement with defendants whereby they were to advance the money, handle the cattle, dispose of them, and pay plaintiff one-half of the net proceeds. Defendants retained a portion of the cattle purchased, but the evidence failed to show that such portion was marketable, or could have been sold at a profit, or that defendants acted in bad faith in failing to sell such cattle. Plaintiff brought action to recover one-half of net proceeds, and matter was referred to a referee to determine amount due, but no evidence was introduced as to value of cattle not sold. Held, that defendants were not chargeable in such action with portion of cattle unsold, or liable for one-half of their value, estimated by the referee without any evidence upon which to base such estimate.—P. 351.

2. **Partnership—Essential Elements.**

The essential elements of a partnership are community of loss, of expense, of title, and a common right to dispose of the property for purposes of a partnership.—P. 352.

3. **Same—Agreement Insufficient to Create.**

An agreement, whereby one party binds himself to advance money to carry out a contract of sale between the other party and a third person, to exclusively manage and dispose of the property, to be solely liable for its loss, and to equally divide the net proceeds, does not constitute a partnership.—P. 352.

4. **Contracts—Performance—Right of Action.**

A third person, who agrees with the contract purchaser of cattle to advance the money necessary to carry out the contract, to handle the cattle, to dispose of them, and to pay to the purchaser one-half of the net proceeds, becomes subject to an action by such purchaser whenever the cattle are sold, or by the exercise of reasonable diligence might have been sold, or when it is shown by reason of fraud or willful misconduct any of them remain unsold.—P. 353.

*Appeal from the District Court of Pueblo County. Hon. N. Walter Dixon, Judge.*

Action by Charles Gause against L. Baldwin &

Co., Levi Baldwin, Lee Baldwin, Fred Baldwin and Anna Baldwin—upon the death of Gause, George F. Patrick, the administrator of his estate, was substituted as plaintiff. From a judgment for plaintiff, defendants appeal.          *Reversed and remanded.*

Mr. O. G. Hess, Mr. Robert C. McManus, and Mr. Alva B. Adams, for appellants.

Messrs. Crane & Patrick, for appellee.

This is a proceeding instituted by Charles Gause against two partnerships, each of which was known as L. Baldwin & Co., and designated in the complaint as L. Baldwin & Co. No. 1, and L. Baldwin & Co. No. 2. The former was composed of Levi, J. C., Fred and Lee Baldwin; the latter, formed the 26th of June, 1899, was composed of the same parties and Anna and Mary Baldwin, and Edward F. Swift. Gause, having died during the pendency of the action, George F. Patrick, administrator of his estate, was substituted as plaintiff. The facts upon which the controversy arises, as alleged in the complaint and found by the court below, are, in brief, as follows:

On the 23d of September, 1896, Gause had an agreement with T. F. Wright, manager of The Western Union Cattle, Land & Irrigation Company, for the purchase of a herd of cattle known as Anchor X cattle. Being financially unable to purchase and handle the cattle under this agreement, he made an agreement with the firm of Levi Baldwin & Co. No. 1, to the effect that the company should advance the necessary funds to carry out his contract with Wright; should receive and pay for the cattle delivered under said contract, and would assume full control and management of, and handle and care for, and dispose of the cattle delivered, and that, after deducting the purchase price advanced by the company and the necessary expenses for

the handling and caring for the cattle, out of the proceeds realized from the sale thereof, the remainder of the proceeds should be divided equally between them; that in pursuance of this understanding and agreement, on October 1, 1896, L. Baldwin & Co. No. 1 entered into a written contract with The Western Union Cattle, Land & Irrigation Company for the purchase of its herd of cattle estimated at three thousand head, more or less, at $10.50 per head. Under and in pursuance of this contract there were delivered to L. Baldwin & Co. No. 1, 3416 head of cattle, for which they paid $33,883.50. In March, 1897, L. Baldwin & Co. No. 1 entered into a written contract with Simpson & Bourbonia for the purchase of 640 head of cattle, 116 head of which were known as the Hank Bignell cattle, which were delivered to L. Baldwin & Co., and for which they paid $9,944. The plaintiff claims, and the court below found, that these cattle were purchased under the same agreement between Gause and the company as the Anchor X cattle, and were to be handled upon the same terms, and that he, Gause, was to receive one-half of the net profits derived therefrom. The referee finds that from the proceeds derived from the cattle sold, after deducting the purchase price and expenses, there remained in the hands of L. Baldwin & Co. No. 1 at the time of the beginning of this suit, a net profit of $11,786.73; that Gause was entitled to one-half of this amount, less $2,900 theretofore paid him, being a balance of $2,993.36.

The referee further finds that there remained unsold and in the possession of L. Baldwin & Co. No. 1, at the time of the commencement of this suit, 1,047 head of cattle, in regard to which he makes the following finding:

"There is nothing in the evidence to show what is the value of these cattle, taken as a herd.   Bald-

win & Co., during 1900, marketed cattle at the sum of $18.55 per head, but these were evidently marketable cattle. As to what herds of cattle were worth per head, there is nothing to show. There is the testimony of Mr. Logan that in 1899 calves were worth $11 per head. On this basis I estimate that the cattle as a herd were worth $17 per head. This, then, would fix the value of the cattle, at the time this suit was brought, at $17,799.''

And he finds that there was due Gause from the defendants one-half the value of these cattle, to wit, $8,899.50, which, together with the balance above mentioned, made a total indebtedness of Baldwin & Co. to Gause of $11,892.86. The court below approved the referee's report, and rendered judgment against L. Baldwin & Co., Levi Baldwin, Lee Baldwin, Fred Baldwin and Anna Baldwin for this amount and costs.

Mr. JUSTICE GODDARD delivered the opinion of the court:

Among the numerous errors assigned, appellants challenge the correctness of this judgment upon the ground that it is not in accordance with the allegations of the complaint, or justified by the evidence introduced. By the express terms of the contract alleged, and as testified by Mr. Gause, L. Baldwin & Co. No. 1 was to receive, pay for, handle, care for and sell, the cattle, and, after deducting from the amount realized from their sale the purchase price and the amount expended for their care and management, pay to Gause one-half of the remaining net proceeds. There is no averment of wrongful conduct or willful neglect on the part of the defendant in selling or failing to sell the cattle received under the contracts. The allegations of the complaint are, in substance: That a large per cent. of the cattle

and calves delivered under the contracts had been sold at a large profit, and that all of them could have been sold at and proximate to the time of said delivery for prices that would have netted large and substantial profit; that L. Baldwin & Co. No. 1 failed and neglected and refused to dispose of all of said cattle, but took possession of a large remnant of cattle and turned the same out upon the ranges, and although for a long time subsequent to the delivery of such remnant the prices were such that all of said cattle and offspring therefrom could have been disposed of at a fair and reasonable net profit, L. Baldwin & Co. No. 1, though importuned to do so, refused and neglected to dispose of the same, and such said remnant remained in the possession of that company, or its successor, L. Baldwin & Co. No. 2.

These averments were put in issue by the answer, and we find no evidence as to whether these cattle were marketable, or could have been sold at a profit, or any evidence tending to show any bad faith or willful misconduct on the part of the defendants in failing to dispose of the cattle remaining on hand at the time of the commencement of this suit. In these circumstances, we do not think the defendants are chargeable with the cattle unsold, or liable to plaintiff for one-half of their value, even if such value was ascertained upon competent testimony; and they certainly cannot be held for an amount estimated by the referee without any evidence upon which to base such estimate.

Notwithstanding the judgment must be reversed, and the cause remanded for the reasons above given, we feel it incumbent upon us, in view of another trial, to determine the further question as to the relationship of the parties under the agreement set forth in the complaint and relied on by plaintiff. Counsel for appellee contend, and the court below found, that

a partnership existed between Gause and L. Baldwin & Co. No. 1 in relation to the transaction under consideration; while counsel for appellants insist that the terms of that agreement do not create that relationship between the parties, but lacks many of the essential elements of a partnership, viz.: "Community of loss, community of title, community of expenses, and common right to dispose of the property for purposes of a partnership."—*Beckwith v. Talbot*, 2 Colo. 639.

In *Lee v. Cravens*, 9 Colo. App. 272, 288, it is said:

"Another incident of a partnership is the sharing of losses by the partners. The partnership contract may say nothing about losses, but the right to participate in profits implies a corresponding liability for losses; and it has accordingly been held that an agreement for the division of profits is admissible in evidence as tending to show a partnership. Where, however, an agreement between two or more persons, in relation to the prosecution of an enterprise, provides that one of their number shall incur no risk, and be chargeable with no loss, the agreement is not one of partnership."

Under the contract with the Western Union C. L. & I. Co. and the contract with Simpson & Bourbonia, the title to the cattle purchased and their increase vested in L. Baldwin & Co. No. 1. They had the care, management, and the sole power to dispose of them. There was no community of loss between Gause and the company. If the cattle had died after the purchase by the company, or the venture had proven a failure for any other reason, the whole loss would have fallen upon the company, and Gause would not have been answerable to the company for any part of the loss it may have suffered thereby.

As we construe the agreement between Gause

and L. Baldwin & Co. No. 1, it did not constitute a partnership between them, but is evidence of the fact that Gause turned over to L. Baldwin & Co. his agreement with Wright for the purchase of the Anchor X cattle and all his rights thereunder, in consideration that the company should assume all responsibility of the purchase, care and disposition of the cattle, and account for, and pay to him, one-half of whatever net profit should be realized from the transaction when consummated.

Under this contract, a right of action would exist when all the cattle purchased by L. Baldwin & Co. No. 1 in pursuance of it had been, or by the exercise of reasonable diligence might have been, sold, or when it is shown that, by reason of the fraud or willful misconduct on the part of the defendant companies, any of them remain unsold.

The judgment is reversed and the cause remanded.                                             *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.