No. 15,829.

QUIER *v.* RICKLY ET AL.
(177 P. [2d] 549)

Decided February 3, 1947.

Mr. BENJAMIN C. HILLIARD, JR., Messrs. GRIFFITH & GRIFFITH, for plaintiff in error.

Mr. W. F. ROBINSON, JR., for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFF in error, plaintiff in the trial court, filed his complaint for declaratory judgment alleging that he and the defendants had been engaged in the cleaning and dyeing business in Denver; that in October, 1942, he had agreed to purchase from the individual defendant, Rickly, certain machinery, on which purchase he had made a part payment of $875, leaving a balance due of $1,595.60 which he was ready and willing to pay. The prayer of the complaint was that the court determine the rights and status of plaintiff under the agreement to purchase, the identity of the person, firm or corporation to whom the balance of the purchase price is due, and whether proper application had been made of the amounts already paid. The individual defendant answered, alleging that in October, 1942, plaintiff and himself entered into an oral partnership agreement for the purpose of conducting a cleaning and dyeing business under which each would "contribute the use of machinery and equipment necessary for the operation of a complete dyeing and cleaning plant," and under which the profits from the conduct of said combined business would be divided equally between the parties; that as a

result of such agreement each of the parties did contribute the business which they had owned or controlled. That since November 1, 1942, they have continued to operate such business as a partnership.

After a trial to the court judgment was entered in favor of defendants, the court finding that a partnership existed between the parties under which the partners were equal, each partner to share equally in the assets and liabilities, each to have one-half of the profits, and each to bear one-half of the losses; that the individual defendant was entitled to an accounting. Plaintiff was directed to convey to the partnership the good will and business of his establishment (Munson Cleaners and Dyers) and the defendant was likewise ordered to convey to the partnership the good will and business of defendant corporation (Capital Dye and Cleaning Company), in which Rickly owned all of the stock except directors' qualifying shares, and such machinery and equipment from the plant of the latter as was moved to, and installed in, the plant at 1320 East Seventeenth Avenue, Denver (the original location of plaintiff's plant).

Plaintiff specifies as error that, "The evidence, taken as a whole, does not sustain the finding and decree that a partnership existed between the plaintiff and the individual defendant;" and that the findings and decree constitute "an attempt by the trial court to make and enforce an agreement between the parties contrary to any version of the evidence as a whole."

The testimony of Quier supported the allegations of his complaint. The testimony of Rickly and his attorney, Fred W. Mattson, was to the effect that two meetings were held in October, 1942, relative to the consolidation of the dyeing and cleaning establishments then being conducted respectively by Rickly and Quier; that the two principals talked about going into a partnership and, when Mattson suggested that he draw up the terms of a partnership agreement, Quier answered that its was not necessary, that the agreement was simple and they

understood what it was, saying, "Isn't an oral agreement just as good as a written agreement?" Both Mattson and Rickly testified that Rickly and Quier agreed to pool their businesses and that the consolidation was to be on a "fifty-fifty basis."

The uncontradicted evidence shows that the two men did consolidate their businesses as of November 1, 1942; that Rickly moved some of the machinery from his plant to the plant of Munson Cleaners and Dyers, where the consolidated business was to be operated; that thereafter both Quier and Rickly worked long hours at the plant, although all other persons worked on an eight-hour daily basis and were paid regularly as employees. Some of these employees were formerly with Rickly at his old establishment, and some were former employees of Quier at his original place of business.

The evidence further disclosed that the information return to the Bureau of Internal Revenue of the United States Treasury Department listed all workers at the plant as employees, except Quier and Rickly; that this information return disclosed a withholding tax applied to all workers at the plant, except Quier and Rickly. No federal social security card was issued to either Quier or Rickly, and the business's social security returns included neither of their names. No partnership income tax returns were filed covering November and December of 1942. Rickly explained that this was because of the fact that neither he nor Quier withdrew any money from the establishment during those two months. No partnership returns were filed for 1943. Rickly testified that he called Quier's attention to the fact that such returns should be filed, but by that time Quier was claiming there was no partnership.

The undisputed evidence also shows that the combined firm continued to use the telephone number of Rickly's establishment and, shortly after the consolidation, discontinued Quier's former number. The title of the consolidated firm contained a name from each of the

two constituent firms, Capital-Munson Cleaners and Dyers, and the new billheads had listed below the title the names of the proprietors of the two firms that had been combined, as follows: "Emil Rickly, est. 1908," "Alvah C. Quier, est. 1911." Some of the business cards of the combined firm contained Emil Rickly's name in the lower left-hand corner, and some bore the name of Alvah C. Quier in that position. The following advertisement appeared in a local theatre program in November, 1942:

"Capital Dye and Cleaning Company and Munson Cleaners and Dyers

"Have merged these two fine cleaning establishments to better serve their clientele and for the purpose of continuing the high standard of workmanship of both companies.

"We have been serving the public for more than thirty years and will continue at our central location.

"1320 East 17th Avenue.        Phones:  MAin 3268.
                                        TAbor 2625"

The undisputed evidence also shows that the withdrawals of money by Rickly and Quier from the combined establishment in 1943 were in equal amounts. This latter fact would be in harmony with Quier's theory of the case as well as that of Rickly, in that the former testified there was an agreement that each of them should draw equal pay until Quier paid for his machinery; but the other bits of undisputed evidence set forth above are not in harmony with plaintiff's theory and afford strong corroboration of defendant's testimony.

There was evidence showing that before consolidation Rickly had a gross business of about $12,000 and Quier of about $6,000, but that Quier had a safe margin of profit whereas Rickly had not. There also was evidence from which it appeared that the equipment in Quier's plant was more valuable than that in Rickly's;

that in the first year of their combined business the gross was in the neighborhood of $20,000.

Counsel for plaintiff stresses the fact that there is no mention in the testimony of any specific arrangement respecting the sharing of losses, and cites the two cases (5 Colo. 564, and 39 Colo. 347), mentioned in the following quotation, on the proposition that the mere sharing of profits is not enough to constitute a partnership. We passed on this question in *Richardson v. Keely*, 58 Colo. 47, 54, 142 Pac. 167, when we said:

"It is also urged that a division of profits does not constitute a partnership, and *Le Fevre v. Castagino*, 5 Colo. 564, and *Baldwin v. Patrick*, 39 Colo. 347, 91 Pac. 828, are cited. This court has uniformly held that the sharing of profits does not of itself necessarily constitute a partnership. But it is the rule in all jurisdictions that the fact that a person shares the profits of a business, tends to show that he is a partner therein, 30 Cyc. 386.

\* \* \*

"It is insisted that there was nothing said in the agreement as to losses, and for such reason there was no partnership.

"While the sharing of losses is an incident of partnership, it has been held that the right to participate in profits implies a corresponding liability for losses, and that though there is no clause in the contract saying that either party was to bear the losses, in the absence of evidence to the contrary, the law presumes that losses were to be borne by them in the same proportion in which they shared the profits. *Lee v. Cravens*, 9 Colo. App. 273, 48 Pac. 149; *Ramsay v. Meade*, 37 Colo. 465, 86 Pac. 1018.

"The parties constituting the alleged partnership must be presumed to have intended the very things they did, in the conduct of the whole matter, particularly in view of the fact that it is not contended here that any one of

them performed a single act without the agreement of all the others."

Our statute, '35 C.S.A., chapter 123, section 7, provides that:

"In determining whether a partnership exists, these rules shall apply:

\* \* \*

"4. The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(a) As a debt by installments or otherwise,

"(b) As wages of an employee or rent to a landlord,

"(c) As an annuity to a widow or representative of a deceased partner,

"(d) As interest on a loan, though the amount of payment vary with the profits of the business,

"(e) As the consideration for the sale of a good-will of a business or other property by installments or otherwise. [L. '31, p. 647, §7.]"

In *Le Fevre v. Castagino, supra,* we held there was no partnership; that there, the true relationship was that of debtor and creditor, where the debtor had agreed to give his creditor a share of his profits in a mining operation, if any, in lieu of paying interest on a loan. In *Baldwin & Co. v. Patrick, supra,* we held there was no partnership in a cattle transaction where the title to the cattle and their increase vested in one of the parties who also had the care, management and sole power to dispose of them, and the other party had retained merely a share in the profits, if any, upon their ultimate sale.

In the instant case, the plaintiff has attempted to overcome the prima facie showing resulting from the evidence that Rickly and Quier shared equally in the profits of the combined business by contending that the payments which Rickly received were the wages of an employee, with any overplus to apply on the payment of a debt.

12

The trial judge, in effect, ruled that the statutory inference in favor of the defendant was not overcome by the evidence adduced at the trial. We believe there is justification for such ruling, not merely from the testimony of Mattson and Rickly, but from the undisputed evidence as to what Rickly and Quier did and did not do after they had combined their respective businesses.

The judgment is affirmed.

MR. JUSTICE HILLIARD and MR. JUSTICE LUXFORD not participating.