## No. 13,526.

BANKERS UNION LIFE INSURANCE COMPANY v. ATSCHEL.

(49 P. [2d] 385)

Decided September 16, 1935.

Mr. James W. Creamer, Mr. C. Milton Morris, for plaintiff in error.

Mr. Percy S. Morris, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

December 1, 1930, Atschel became a special agent of the Bankers Union Life Insurance Company for the sale of life insurance, on commission basis, fixed by the terms of a written contract. He continued this employment until January 16, 1932, when he entered into an agency supervisor's agreement with the company to run concurrently with the special agent's contract. Under the later and additional contract, he was given authority to appoint agents for the company in the territory assigned in the contract, was to receive an overwriting commission on the business produced by such appointed agents, and was to have a "drawing account" of $75 per week, "in lieu of salary and expenses." By the agreement, he assigned to the company one-half of the commissions earned by his personal business and the overwriting commissions on production of other agents appointed by him. Atschel claimed a balance due him from the company under the contracts, and brought this suit to recover. On a jury verdict, he obtained judgment for $1,825.93, and the company assigns error.

The company, by its answer, claimed that the contracts had, on May 9, 1932, been modified orally to the effect

that "all" the commissions earned under the contracts were to be assigned to the company, instead of one-half as specified in the written contract, and that the "drawing account" was orally reduced from $75 to $40. It further contended that the "drawing account" was an advance against commissions to be earned, and that it had advanced Atschel more money than his commissions had amounted to. By counterclaim it prayed for judgment on several amounts, which total $1,407.25.

Atschel denied the oral modifications of the contracts as alleged by the company, and contended that the money he received on the drawing account was in the form of a salary, which he was not obligated to repay. The court, apparently adopted his construction of the contract, and denied the offer of the company to show, by witnesses experienced in such insurance matters, that the words "drawing account" had a meaning peculiar to the insurance business, by custom and usage, when used in agency contracts. On this ruling of the court, error is claimed by the company.

Except as to the difference in amount of credits and charges, arising from the assignment of commissions, if the contracts were orally modified as alleged, the calculations required for an adjustment of the amount due either party, seem to be generally stipulated, depending upon the construction of the contracts, more especially the words "drawing account" as used therein.

The pertinent parts of the agency supervisor's agreement (Ex. B) which present the sole controversy, are as follows:

"Supervisor shall have a drawing account of Seventy-Five ($75.00) Dollars, payable weekly, in lieu of salary and expenses.

"As further compensation, said Supervisor shall receive in addition to said drawing account, a first year and renewal commissions on all accepted business submitted by all General, Special, and Local agents appointed by Supervisor in said territory,   *   *   *.

380

"As compensation for the drawing account recited in paragraph No. 3 of this agreement, Supervisor shall assign, and by virtue of this agreement does assign to company, one-half of all commissions earned under paragraphs numbered 4 and 5 of this agreement."

■ To make competent the testimony offered by the company for the purpose of showing by custom and usage the meaning and application of the words "drawing account" as used in the contract before us, ambiguity therein must be apparent. Under our interpretation of the contract, it is free from ambiguity and susceptible only to the view of, and interpretation apparently placed upon it by, the trial court, which committed no error in the refusal of the testimony offered.

■ Without doubt the intention of the parties could have been couched in more fortunate language, but that employed can only be construed as contended for by Atschel. In substance, his claim is to the effect that the paragraph, "Supervisor shall have a drawing account of Seventy-Five ($75.00) Dollars, payable weekly, in lieu of salary and expenses," means that whatever the amount drawn by him thereunder, was in the form of salary or compensation for his services, which he was under no obligation to repay. If otherwise, the company certainly was free to have clearly stated its position or requirement by providing for the assignment to the company of all commissions that were to be earned by Atschel, to be charged or credited to him under that account. That this was not the intention is amplified by such words as "as further compensation * * * shall receive in addition to said drawing account * * *." As a measure to minimize the chance taken, and the speculation made, upon the money to be drawn by Atschel, the following provision appears in the contract: "As compensation for the drawing account * * * supervisor shall assign, and by virtue of this agreement does assign to the company, one-half of all commissions earned

\* \* \*.'' That this arrangement was not altered or modified, was apparently believed by the jury, to whom this question was squarely and clearly submitted. We believe the issues were properly tried, and a determination of the facts by the jury under instructions to which no serious objection is made, will not be disturbed.

The judgment is therefore affirmed.

Mr. Chief Justice Butler and Mr. Justice Bouck concur.