No. 19,339.

ARGONAUT BUILDERS, INC., *v.* WILLIAM ANDREW DARE.
(359 P. [2d] 366)

Decided February 14, 1961.

Messrs. CADDES and CAPRA, for plaintiff in error.

Mr. SHELDON EMESON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE parties will be referred to as they appeared in the trial court where plaintiff in error was the plaintiff in an action to recover money alleged to have been loaned to the defendant. By answer, defendant denied that the transactions in question were loans and further alleged that the monies paid to him by the plaintiff were advances on anticipated commissions; that no agreement to repay existed and that consequently plaintiff was not entitled to recover.

Trial was to the court and upon conclusion of the plaintiff's case, defendant's motion to dismiss was granted and judgment of dismissal entered.

The facts adduced show that the defendant had been engaged in soliciting building and remodeling contracts for plaintiff and the alleged indebtedness of $2,473.49 is a debit balance of defendant's account as of the date

he terminated his employment. Defendant became associated with plaintiff in October 1956 and the relationship continued until November 1958. The president of the plaintiff corporation testified that defendant's engagement was as an independent contractor. Defendant, on the other hand, testified that he was a commission salesman. The parties did not enter into a written contract and as a result the exact nature of the relationship must be ascertained from the surrounding circumstances. It would appear that as of March 11, 1957, the books of the plaintiff corporation did not disclose any indebtedness owed by plaintiff, although advances had been made prior thereto. Between March 11, 1957, and November 1958, there was a continuous debit balance against the defendant on plaintiff's books.

The arrangement between the parties required defendant to solicit building contracts, including processing of credit applications and representation of the plaintiff in other dealings with the customer. For this service, defendant received 60 per cent of the profit realized and the plaintiff 40 per cent. Considerable delay was experienced in obtaining compensation under the building contracts and this meant that the defendant's share of the profits was delayed. As a consequence, plaintiff made regular advances in varying amounts which coincided somewhat with the bringing in of business. During the period in question, 131 checks were given to the defendant and were charged to his account. These ranged from $10.00 to $400.00. When a loss was sustained on a contract plaintiff was required to bear 40 per cent of such loss and the defendant the remaining 60 per cent; and the running account of the defendant would be thereupon debited. These charge backs accounted for part of the unfavorable (to defendant) balance. When a profit was realized the account would be credited. The amount in each instance would be 60 per cent of the total. Statements were delivered to the defendant each week. This statement would show the

amount credited to his account as a result of the commission received, the amount of the old deficit and the amount of the new deficit.

In November 1958 defendant informed plaintiff that he was terminating his work with plaintiff; that he was no longer going to write contracts for the plaintiff company. On that occasion he was advised of the large amount that he was overdrawn and expressed his surprise that it was so large. He did not, however, deny that the arrangement had been one which contemplated the existence of a debt in connection with the overdrawals.

At the conclusion of the evidence of plaintiff, defendant moved for a dismissal. In granting the motion the court ruled that the payments to defendant constituted advances on commissions and for that reason plaintiff could not recover. At the same time the court observed that defendant was morally obligated to make payment and expressed the hope that he would see fit to do so.

In urging that the ruling of the trial court was erroneous, plaintiff argues that the relationship was that of an independent contractor rather than an employee, and further urges that the monies paid were intended to be loans contemplating repayment not only in credits but in cash, if necessary, upon termination of the relationship.

Defendant's position is that he was a salesman and that the advances were in the nature of a drawing account and that plaintiff failed to prove that the parties contemplated repayment.

From the circumstances, it appears that the defendant operated on an independent basis free of control by the plaintiff. The job required him to procure contracts which were subject to acceptance (assuming that the credit of the subject was satisfactory) by plaintiff. Defendant's interest in the transaction was that of obtaining 60% of the profits. The manner of making advances, of maintaining a running record of the defend-

ant's account, the giving of regular statements to the defendant, sharing the charge back of losses as well as the credit of profits, leads to the conclusion that defendant's status was much more in the nature of a contractor than an employee and therefore that the debit balance shown was a bona fide debt and not a drawing account chargeable only to commissions earned.

█ The general rule, on which the trial court based its decision and on which the defendant relies here, is that where a contract of employment provides for advances to the employee to be charged to and deducted from the commission agreed upon as the same may accrue, the employer cannot, in the absence of an express or implied agreement or a promise to repay any excess of advances or commission earned, recover such excess advances from the employee. Numerous cases supporting this doctrine are collected in 165 A.L.R. 1367 in a note on *Sutton v. Avery,* 132 Conn. 397, 44 A. (2d) 701, and also in 57 A.L.R. 33. It would seem from the cases referred to and an analysis of the rule reported in 56 C.J.S. 561, *Master and Servant,* sec. 120c, that the basis for the doctrine is that the payments are made in regular amounts in consideration of continued activity by the employee and are thus in the nature of salary or wages. Because of this regularity of payment and the requirement that the employee give his full time to the employment, the presumption arises that the advances are recoverable only from commissions and thus the excess cannot be collected by the employer.

There is no direct authority on this point in Colorado, although there are two decisions which appear to recognize the general rule. See *Gross Bergman Maufacturing Co. v. Feil,* 80 Colo. 239, 250 Pac. 387, and *Bankers Union Life Insurance Company v. Atschel,* 97 Colo. 377, 49 P. (2d) 385. In the *Gross Bergman* case there was a written contract which required the employer to advance to the employee the sum of $125 per week to be used by the employee to cover traveling and incidental expenses

to be charged against him as a drawing account "and deducted from any amounts due the second party as commissions." A further stipulation was that any excess of drawing account over commissions "shall not be a personal charge against the second party." The court refused to allow the employer to recover and based the decision on the express terms of the contract. In the *Bankers Union Life Insurance Company* case, the decision was also in favor of the employee, but there the employer agreed to pay $75 weekly "in lieu of salary and expenses." The court held that the $75 weekly amount was intended as salary or compensation for services rendered "which he was under no obligation to repay."

In these cases the intention of the parties that the excess of drawing account over commissions was not recoverable clearly appeared. In the case before us the intent of the parties, gathered from all of their dealings and especially from the requirement that the defendant bear losses where losses occurred, lead to the contrary conclusion that the parties intended that a debt should arise. recoverable not only from commissions earned; that the defendant should be liable to the extent that the charges exceeded the payments to him.

It follows, therefore, that the plaintiff's evidence was sufficient to withstand the motion to dismiss at the close of its case and that the court should have heard further evidence if the defendant cared to offer any which might serve to shed light on the intention of these parties.

In view of the necessity for further proceedings, it should also be pointed out that if the court finally concludes that the defendant was a contractor and not an employee, that the defendant in the final accounting should be given credit for the profits on all of these contracts for which payments were made after the termination of his arrangement with the plaintiff. By the same token, losses should be charged against him. In such event, the court would also be required to make adjust-

ments resulting from the failure of the defendant to service these contracts to the extent customarily required after the termination of his duties with the plaintiff.

Judgment of the district court is reversed and the cause remanded for a new trial or other proceedings consistent with the views expressed herein.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.