VALOCO BUILDING PRODUCTS, INC. *v.* GEORGE CHAFEE

CIRCUIT COURT

NINTH CIRCUIT
FILE No. CV 9-643-1663

Memorandum filed November 22, 1966

*Thomas C. Cambria,* of Middletown, and *Morton H. Greenblatt,* of Meriden, for the plaintiff.

*Irwin D. Mittelman,* of Middletown, for the defendant.

JACOBS, J. This is an action on the common counts, with an amended bill of particulars, by an employer to recover from a former salesman the amount by which the advances which were made to the salesman from January, 1963, through May 18, 1963, exceeded the commissions he earned during that period. The plaintiff was engaged in the business of selling storm windows, awnings, shutters, patio covers, aluminum siding and other building products. In the early part of January, 1963, the plaintiff employed the defendant as one of its salesmen under an oral agreement. The date of the defendant's severance from his employment may be fixed at May 18, 1963, although in view of the findings on the legal issues and conclusions the exact date of severance is not material. Upon defendant's separation, it was discovered that the defendant, during his period of employment, earned commissions from the sale of the plaintiff's products in the amount of $718.19; the amount of his "draw" during the same

period totaled $1705. This action was brought to recover of the defendant the moneys advanced to him in excess of the commissions earned by him.

The issue is whether the advances made by the employer to the salesman represented an unconditional obligation requiring repayment or a conditional obligation to be repaid from commissions earned.

Connecticut has adopted the majority rule that, where advances made to a salesman are charged against commissions earned, he is not required to pay any excess of advances over commissions unless it has been expressly or impliedly agreed that he do so. *Sutton* v. *Avery,* 132 Conn. 397, 399; *Roxy Furniture & Novelty Co.* v. *Brand,* 106 Ga. App. 104; *Hibbs-Kiefer Hat Co.* v. *Schneiderhan,* 236 Ky. 470; *Perma-Home Corporation* v. *Nigro,* 346 Mass. 349, 352; *Selig* v. *Bergman,* 43 Wash. 2d 205; *Richmond Dry Goods Co.* v. *Wilson,* 105 W. Va. 221; *Shaler Umbrella Co.* v. *Blow,* 199 Wis. 489; 3 Am. Jur. 2d, Agency, § 218; 56 C.J.S. 561, Master and Servant, § 120; notes, 57 A.L.R. 33, 165 A.L.R. 1367; 2 Labatt, Master and Servant (2d Ed.) § 461 (4), p. 1358; cf. Restatement (Second) 2 Agency § 382, comment d.

In *Perma-Home Corporation* v. *Nigro,* supra, the Supreme Judicial Court of Massachusetts adopted the rationale advanced in *Shaler Umbrella Co.* v. *Blow,* supra, 491, where the Wisconsin court said: "The reasoning supporting the conclusion that there is no personal liability on the part of the agent for excess advances may be epitomized as follows: An undertaking whereby an employer sends out an agent to work upon a commission is in the nature of a joint adventure from which both hope to profit. The employer profits by the development and enlargement of its business and the agent by

remunerative employment. The undertaking may prove a success or a failure. If the agent be required to repay all the advances made in excess of his commissions earned, the entire risk of the adventure is his, and a construction leading to this result will not be indulged where there is no express agreement on the part of the agent to repay such excess."[1] See also *Larson* v. *Watzke,* 218 Wis. 59, 61; *Union Central Life Ins. Co.* v. *Balistrieri,* 19 Wis. 2d 265, 268 (reaffirming the doctrine laid down in *Shaler Umbrella Co.* v. *Blow,* supra).

The New Jersey court in *Joseph Toker, Inc.* v. *Cohen,* 67 N.J. Super. 68, 74, followed its earlier case of *Roofing Sales Co.* v. *Rose,* 103 N.J.L. 553: "The principle first enunciated in this state in *Roofing Sales Co.* v. *Rose, supra,* is firmly established in our jurisprudence. . . . It is premised, first of all, upon the unspoken assumption that the superior bargaining power of the employer *vis-a-vis* his agents warrants imposing upon him the duty of making explicit his rights under an employment agreement—especially where he demands the return of previously transferred funds. Secondly, there is the settled judicial reluctance to cause a 'forfeiture' of property already received unless it convincingly appears that such a result was intended by the parties. The rule, articulated in terms of contractual intent, is thus one of implication or presumption, properly placing the burden of overcoming it upon the party seeking repayment. In the absence of express stipulation or convincing circumstances indicating a contrary arrangement, advances to an employee will be presumed to constitute payments in lieu of salary and to fix the employee's minimum compensation. Stating the rule con-

---

[1] *Shaler Umbrella Co.* v. *Blow,* 199 Wis. 489, came to be cited as a leading case. See notes in 78 U. Pa. L. Rev. 777-78, 14 Marq. L. Rev. 85-87, 15 Iowa L. Rev. 202-3, 5 Wis. L. Rev. 426-30.

versely, an implication of obligation on the part of the employee to repay advances will not be drawn unless the contract or the surrounding circumstances demand such an inference." The doctrine of "implication or presumption" was also adopted by the Colorado court. "[T]he basis for the doctrine is that the payments are made in regular amounts in consideration of continued activity by the employee and are thus in the nature of salary or wages. Because of this regularity of payment and the requirement that the employee give his full time to the employment, the presumption arises that the advances are recoverable only from commissions and thus the excess cannot be collected by the employer." *Argonaut Builders, Inc.* v. *Dare,* 145 Colo. 424, 428.

But the essential question to be answered is: What was the intent of the parties? The plaintiff's argument seems to be effectively answered by the following quotation from *Richmond Dry Goods Co.* v. *Wilson,* supra, 224: "We cannot construe this engagement to imply that all the risk was taken by the employee. We regard it rather as signifying a joint enterprise in which the employee furnished his time and ability and the employer furnished the money necessary to enable the employee to devote himself thereto. Both expected the adventure to produce a fund (the earned commissions) from which each would be fully compensated—the one for his time and labor, and the other for his money. The advances are therefore not regarded as loans to the employee but as speculations in a common enterprise. 'In its strictly etymological significance, the "advance" of money would not imply a loan. . . . We speak of an advance of wages and an advance of salary, yet no one would regard this as a loan of so much money to the employee, which he has promised or is expected to repay. Again, for the

purposes of a joint adventure, one agrees to give his services, and the other to advance the capital required. No one would consider the former bound to repay the capital advanced out of his own means. Hence, without a promise to repay, express, or fairly to be implied from the agreement under which the advances were made, a promise to advance money for a particular purpose—as here, the furtherance of the . . . [plaintiff's] business—does not import an expectation of its return personally by the person to whom the money was advanced.' " See *Schlesinger* v. *Burland,* 85 N.Y.S. 350, 351.

In the case at bar, the parties apparently did not anticipate that earnings would fall below the amount of the advances and consequently made no express provision for that contingency. The contract rests in parol; and, as usual, the parties do not agree as to what the contract was. The court must determine this upon sharply conflicting evidence.

The court finds that no agreement, express or fairly to be implied, covering repayment of advances in excess of commissions earned was established by a fair preponderance of the evidence. In these circumstances, the plaintiff cannot prevail.

For reasons set forth herein, judgment may be entered for the defendant.