Bill L. **TUCKER**, Plaintiff–Appellant,

v.

John P. **ELLBOGEN and Ellbogen–Tucker Interests, a partnership,** Defendants–Appellees.

No. 88CA0074.

Colorado Court of Appeals, Div. II.

Nov. 24, 1989.

Rehearing Denied Feb. 22, 1990.

Certiorari Denied June 25, 1990.

Demirali & Associates, P.C., A.M. Demirali, Denver, for plaintiff-appellant.

Ireland, Stapleton, Pryor & Pascoe, P.C., James E. Nesland, Margaret L. Toal–Rossi, R. Michael Holmes, Denver, for defendants-appellees.

Opinion by Judge PLANK.

Plaintiff, Bill L. Tucker, appeals from a judgment in favor of defendants, John P. Ellbogen and Ellbogen–Tucker Interests (the partnership). We affirm in part, reverse in part, and remand for further proceedings.

In June of 1981, Tucker and Ellbogen formed the partnership with respect to certain oil and gas ventures. In November 1982, Ellbogen informed Tucker that effective December 31, 1982, the partnership would be dissolved and all partnership activities would cease. Tucker then commenced this action to obtain a final accounting of partnership affairs and for unpaid compensation. Ellbogen and the partnership counterclaimed, contending Tucker was liable for partnership debts and for payment on a promissory note made by Tucker to Ellbogen several years prior to the commencement of the partnership.

In a trial to the court, it was determined that a letter agreement setting forth the terms of partnership was ambiguous. The trial court also determined how the partnership was to be wound up, found Tucker liable on the promissory note, and awarded Ellbogen attorney fees. This appeal followed.

I.

Tucker initially asserts that the trial court erred by determining that the letter agreement was incomplete and ambiguous. We disagree.

Tucker submitted a letter agreement to Ellbogen for his review which set forth the terms of the partnership. The agreement was accepted by Ellbogen and stated, in pertinent part, that:

"1. Tucker was to receive a *draw* of $60,000 per year for a period of two years commencing July 1, 1981.

"2. The partnership would consist of an agreement wherein Tucker shall participate as to 25% interest and Ellbogen shall participate as to 75% interest. However, some projects would *vary from this division* from time to time *depending on circumstances* which may arise which neither party would have no control over. [sic]

"3. Ellbogen shall provide the funding for the partnership with a budget which shall be determined by Ellbogen.

"4. Ellbogen was to provide all overhead costs such as office space, secretarial help, and administration costs." (emphasis added)

It is proper to admit evidence to explain a written contract when its terms are indefinite and uncertain. *See Chambliss/Jenkins Associates v. Forster*, 650 P.2d 1315 (Colo.App.1982).

Here, the agreement stated that it only "summarized" the partnership. Furthermore, Tucker conceded that there was some ambiguity as to the meaning of "draw" and that the agreement did not explicitly address the issue of whether the partnership split interests were to be considered net or gross interests. Accordingly, we conclude that the trial court was correct in determining that the agreement was ambiguous and that it did not err in looking at the conduct of the parties to ascertain the meaning of the agreement.

II.

Tucker next asserts that the trial court erred in finding him liable for 25% of the losses of the partnership. We disagree.

■ By its very nature, a partnership is a business venture with prospects and hopes for profits but corresponding risks of losses. *See Farris v. Commissioner of Internal Revenue,* 222 F.2d 320 (10th Cir. 1955). In the absence of language to the contrary, the law presumes that losses are to be borne by the partners in the same percentage as profits. *Quier v. Rickly,* 116 Colo. 5, 177 P.2d 549 (1947); § 7–60–118(1)(a), C.R.S. (1986 Repl.Vol. 3A).

■ Here, the trial court determined that the language of the agreement specifying the percent to which partner was to "participate" meant that 25% of the net losses were to be borne by Tucker and that Ellbogen would be responsible for the remaining 75%. The trial court also determined that all overhead and administrative costs should be allocated solely to Ellbogen because of the provision of the agreement which stated that Ellbogen was to provide for such costs. These determinations of the trial court are consistent with the wording of the agreement and are supported by testimony in the record; hence, they are binding on appeal. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### III.

Tucker next asserts that the trial court erred in its interpretation of the term "draw." We agree.

During the trial, the *only* issue raised or litigated concerning the term "draw" in the agreement was whether Tucker's compensation was guaranteed for a two-year period. Ellbogen contended that the compensation was payable only so long as Tucker was rendering services to the partnership. Tucker argued that Ellbogen should not be permitted to avoid the two-year compensation obligation under the agreement by the dissolution of the partnership. Thus, Tucker argued that he was entitled to be compensated through June of 1983.

■ The trial court, in its initial findings of fact, determined that the word "draw" meant that "the payments would be made while plaintiff was an active partner pursuing the business interests of the partnership." Thus, the trial court determined that upon the dissolution of the partnership in December 1982, Tucker's right to compensation ceased. At that time, the trial court found that Tucker received a "draw" in exchange for the 75%/25% participation differential. We agree with this determination.

■ In construing a contract, a court will follow the construction placed upon it by the parties themselves before a controversy arises. *Blecker v. Kofoed,* 672 P.2d 526 (Colo.1983). And, the conduct of the parties to a contract before any controversy arose is a reliable test of their interpretation of the instrument. *Greeley & Loveland Irrigation Co. v. McCloughan,* 140 Colo. 173, 342 P.2d 1045 (1959).

However, in the trial court's final order it determined that the compensation received by Tucker during the eighteen months he worked in the partnership was to be applied against his partnership account. Thus, the trial court determined that Tucker was required to repay advances on partnership "profits" which had not materialized and charged Tucker with the $90,000 he received in paid compensation. We conclude that this was error.

■ A trial court's findings of fact cannot stand if the record contains no evidence to support them. *Wright v. Horse Creek Ranches,* 697 P.2d 384 (Colo.1985).

■ Here, the record indicates that Ellbogen considered the $90,000 paid to Tucker to be salary. The compensation received by Tucker was not a temporary loan to be applied against future earnings. It was a salary for services rendered and was treated as income to Tucker at all times by Tucker, Ellbogen, and the partnership. Ellbogen testified that the $60,000 in compensation per year was given to duplicate the salary Tucker had received at his previous job. As a result, we conclude that the parties' denomination of the payments as a "draw" cannot change their intent that the compensation was salary for services and was not to be an advance against profits to be earned. *See Bankers Union Life In-*

*surance Co. v. Atschel,* 97 Colo. 377, 49 P.2d 385 (1935).

## IV.

Tucker next contends that the trial court erred by not finding that Ellbogen had breached a fiduciary duty to Tucker during the winding up of the partnership. We agree.

Partners stand in a relationship of trust and confidence to each other and are bound by standards of good conduct and fair dealing. *Hooper v. Yoder,* 737 P.2d 852 (Colo.1987). Each partner has the right to demand and expect from the other a full, fair, open, and honest disclosure of everything affecting their relationship. *Steeby v. Fial,* 765 P.2d 1081 (Colo.App. 1988). *See* § 7–60–120, C.R.S. (1986 Repl. Vol. 3A).

Generally, a partnership dismantling proceeds through a three-step process: dissolution, winding up, and termination. A dissolution of a partnership does not terminate the relationship; rather, it continues until the winding up of the partnership affairs is completed. Upon the completion of winding up, the partnership is terminated. *Steeby v. Fial, supra;* § 7–60–130, C.R.S. (1986 Repl.Vol. 3A).

In the absence of an agreement to the contrary, each partner is entitled to have equal rights in the management and conduct of the partnership business. Section 7–60–118(1)(e), C.R.S. (1986 Repl.Vol. 3A). However, partners may agree that one or more of them shall have exclusive control over the management of the partnership business. Section 7–60–118(1), C.R.S. (1986 Repl.Vol. 3A).

Here, the agreement and the parties' conduct demonstrate that there was an agreement that Ellbogen was to be the managing partner. *See Parks v. Riverside Insurance Co.,* 308 F.2d 175 (10th Cir. 1962); *Hansen v. Hansen,* 130 Mont. 175, 297 P.2d 879 (Mont.1986).

Any partner ordinarily has the right to participate in the winding up process. Sections 7–60–104 and 7–60–137,

C.R.S. (1986 Repl.Vol. 3A). Additionally, any partner has the right to a formal accounting as to partnership affairs whenever circumstances render it just and reasonable. Section 7–60–122(1)(d), C.R.S. (1986 Repl.Vol. 3A).

Here, the record reveals that in late November 1982, Ellbogen announced that effective December 31, 1982, all partnership activities would cease, that the office space and furnishings held in the partnership name would thereafter be held in Ellbogen's name, and that Tucker was to leave the premises and have nothing further to do with the partnership.

On January 13, 1983, Tucker's accountants sent Ellbogen a letter to arrange for the partnership to be wound up. Ellbogen did not answer this letter, and this action resulted.

When the trial court declared the partnership wound up on December 2, 1987, five years had passed since the dissolution of the partnership. During this time, over $200,000 in interest had accrued on a loan that the partnership had guaranteed. The trial court determined that Tucker would be responsible for 25% of the loan *plus interest.* This was error.

After the dissolution of a partnership, each partner continues to have a *fiduciary duty* to the other partner until the partnership assets have been divided and the liabilities have been satisfied. Section 7–60–121, C.R.S. (1986 Repl.Vol. 3A).

Here, Tucker was excluded from the partnership business after December 31, 1982. Thus, we conclude it was Ellbogen's duty, as managing partner, to wind up the partnership. The winding up partner has the duty to wind up expeditiously so as not to cause waste. *See In re Estate of Peebles,* 27 Cal.App.3d 163, 103 Cal.Rptr. 560 (1972).

During the five-year period which it took to wind up the partnership, Ellbogen did not give a final accounting to Tucker, allowed oil and gas leases to expire, and did not take any steps to resolve the bank debt. Furthermore, Ellbogen testified that he did nothing to resolve the bank debt because

he was waiting to see what happened in the trial court case. We expressly reject this justification for delay asserted by Ellbogen since we conclude Ellbogen had the *affirmative duty* to wind up the partnership affairs as *expeditiously* as possible.

As a result of Ellbogen's actions, when the trial court declared the partnership wound up, substantial liabilities existed.

■ We conclude, as a matter of law, that a five-year period to wind up this partnership is unreasonable, and that Ellbogen's failure to act in a more efficacious manner was a breach of his fiduciary duty to Tucker. Thus, the matter must be remanded to the trial court for a new accounting and to determine what a "reasonable" time would have been for Ellbogen to wind up the partnership. The losses and or profits are to be valued as of that date, and they are to be divided between the partners according to the allocation which we have affirmed. The liabilities that have accrued after that date are to be the sole responsibility of Ellbogen.

## V.

■ Tucker also contends that Ellbogen breached a fiduciary duty to the partnership by unilaterally bringing his children into the partnership without Tucker's consent. We agree.

■ No person can become a member of a partnership without the consent of all the partners. Section 7–60–118, C.R.S. (1986 Repl.Vol. 3A). Here, Ellbogen testified that by funding the partnership he felt that he had the unilateral right to add his children to the partnership without Tucker's consent. We conclude that Ellbogen's actions are violative of § 7–60–118.

■ The trial court, in its final order, determined that the final accounting apportioned 25% of the partnership losses to Tucker and 75% to Ellbogen and his children. Accordingly, the trial court concluded that Ellbogen's children did not affect Tucker or the partnership expense allocated to him. However, as the trial court upon remand will determine when the 'reasonable' winding up period should have been, it should also make a specific finding concerning whether the addition of Ellbogen's children to the partnership affected the losses and/or profits that might have existed on the reasonable date of the winding up.

## VI.

■ Tucker next asserts that Ellbogen's personal participation in the purchase and sale of a lease, during the existence of the partnership, was a breach of fiduciary duty. We disagree.

Ellbogen conceded that the lease was a partnership opportunity but contended that Tucker and he had agreed that the partnership should not invest, in a single transaction, the $250,000 needed to acquire this interest. Ellbogen's position was that Ellbogen and Tucker both agreed that the partnership should acquire a one-half interest and that Ellbogen would personally acquire a one-half interest in the lease. Tucker contended that no such agreement existed. However, the monthly accounting reports provided to Tucker disclose and verify the position asserted by Ellbogen.

The trial court specifically found that Tucker's testimony on this issue was not credible and that this agreement had existed. Accordingly, in light of the rule that an appellate court will neither weigh the evidence nor appraise the credibility of witnesses, this determination will not be disturbed on review. *Van Cise, Phillips & Goldberg v. Jelen*, 197 Colo. 428, 593 P.2d 973 (1979).

## VII.

Tucker next asserts that the trial court erred in awarding Ellbogen over $65,000 in attorney fees. We agree.

### A.

■ Initially, we address the trial court's award of attorney fees based upon § 13–17–101, C.R.S. (1987 Repl.Vol. 6A), which allows for the assessment of attorney fees against a party or an attorney who brings an action that the court deter-

mines lacks substantial justification. "Lack of substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious. Section 13-17-102(4), C.R.S. (1987 Repl.Vol. 6A). A claim or defense is groundless if the allegations in the complaint are not supported by any credible evidence at trial. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

Our resolution of the issues in this appeal necessitates our vacating the trial court's award of all attorney fees based on § 13-17-101.

## B.

Tucker next asserts that the trial court's award of attorney fees on a promissory note were outrageous and disproportionate to the work performed. We disagree.

■ The determination of the reasonableness of an attorney's fee is a question of fact for the trial court and will not be disturbed on review unless it is patently erroneous and unsupported by the evidence. *Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979). We perceive no such error here, and hence, the trial court's award of attorney fees on the promissory note will not be set aside.

## C.

Tucker lastly contends that the trial court erred in awarding Ellbogen attorney fees under the Colorado Wage Claim Act, § 8-4-101, et seq., C.R.S. (1986 Repl.Vol. 3B). We disagree.

Tucker initially claimed entitlement to penalties and attorney fees pursuant to the Wage Claim Act and alternately contended he was entitled to compensation predicated upon the partnership agreement. Ellbogen contends that any payment that might have become due to Tucker after he was terminated is not subject to the provisions of the Wage Claim Act. We agree with Ellbogen.

■ The wage statute applies only to those wages and compensation that are "earned and unpaid" at the time of the employee's discharge. Section 8-4-104(1), C.R.S. (1986 Repl.Vol. 3B). It does not require the payment of compensation "not yet fully earned" under the employment agreement. Section 8-4-104(2), C.R.S. (1986 Repl.Vol. 3B); *Lee v. Great Empire Broadcasting, Inc.* (Colo.App. No. 88CA0853 October 19, 1989).

■ Tucker's right to compensation existed only during the life of the partnership. Once the partnership was dissolved in December of 1982 Tucker ceased to perform partnership work, and thus, his right to be compensated also terminated. Hence, the trial court properly ruled that since Ellbogen is the "winning party," he is entitled to recover attorney fees incurred in defense of the claim pursued under the Wage Claim Act. See § 8-4-114, C.R.S. (1986 Repl.Vol. 3B).

In summary, the trial court's conclusion that the partnership agreement was ambiguous is affirmed. The trial court's determination of the method to be used in allocating profits and losses between the partners, and the trial court's conclusion that Ellbogen did not breach a fiduciary duty by his personal participation in a purchase and sale of a lease are also affirmed. The trial court's determination that Ellbogen did not breach fiduciary duties owed to Tucker by failing to wind up the partnership in a reasonable time and by unilaterally bringing his children into the partnership without Tucker's consent are reversed. The cause is remanded to the trial court for further proceedings consistent with the views expressed herein. In view of our determination that Ellbogen breached fiduciary duties to Tucker, the trial court must reconsider its findings that Tucker waived and is estopped from requesting an accounting. Also affirmed is the trial court's initial finding that the $90,000 was intended as the plaintiff's salary and not a "draw" against future profits. Furthermore, the award of attorney fees based on the promissory note and the Wage Claim Act are affirmed, and the award of attorney fees based on § 13-17-101 is reversed.

STERNBERG and FISCHBACH, JJ., concur.