In re DOLLAR CORPORATION; Bra-Con Industries, Inc., Debtors.

**DOLLAR CORPORATION; Bra-Con Industries, Inc., Plaintiffs-Appellees, Cross-Appellants,**

v.

**William Z. ZEBEDEE, Defendant-Appellant, Cross-Appellee.**

Nos. 92–1944, 92–2027.

United States Court of Appeals, Sixth Circuit.

Argued June 25, 1993.

Decided June 13, 1994.

Raymond L. Morrow (briefed), Irwin Alterman (argued), Kemp, Klein, Umphrey & Endelman, Troy, MI, for plaintiffs-appellees cross-appellants.

James A. Newhard (briefed), Clark, Klein & Beaumont, Detroit, MI, Michael V. Kell (argued and briefed), Birmingham, MI, for defendant-appellant cross-appellee.

Before KENNEDY and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

## I.

Defendant William Zebedee, at all times relevant to this appeal, was the president, chairman of the board of directors, and largest single shareholder of plaintiff Dollar Corporation. Beginning in January, 1987, Zebedee began taking advances from Dollar for personal use. These advances were recorded by Dollar as accounts receivable, in the same manner that advances for business expenses to salespeople, a common occurrence, were recorded. Advances were repaid in one of two ways: (1) if the employee was a salesman, the advances would be offset against reimbursable expenses, (2) if the employee was an executive, such as Zebedee, the advances would be deducted from the employee's year-end bonus. In 1987 and 1988, Zebedee took advances of $115,296.64.

In 1986, Dollar elected to become a subchapter S corporation, which meant that Dollar would no longer be paying year-end bonuses. The parties, according to Zebedee, understood that any advances to executives would, from that point on, be deducted from the employee's share of earnings based on corporate profits. Dollar, however, never again earned a profit.

In 1987, Dollar sought to acquire Bra–Con Industries. Because the tax code prohibits subchapter S corporations from owning more than eighty percent of the stock of another corporation, Dollar orchestrated a transaction whereunder the company purchased seventy-five percent of Bra–Con's stock and Zebedee and two other Dollar shareholders acquired the remaining twenty-five percent. Dollar financed the purchase of the shares issued in the name of William Zebedee and the two other individuals. Dollar recorded these transactions as accounts receivable in amounts corresponding to the number of shares issued. When the transaction was completed, Zebedee owed Dollar, according to Dollar's books, $60,900 for his stake in Bra–Con.

On May 31, 1988, Dollar fired Zebedee. In December, 1988, Dollar and Bra–Con filed Chapter 11 bankruptcy petitions. In October, 1990, Dollar brought this adversary proceeding against Zebedee to recover the $115,296.64 representing his advances and the $60,900 representing the Bra–Con share purchases. Dollar premised its complaint upon several alternate legal theories, including breach of contract, breach of fiduciary duty, and conversion. Zebedee requested a jury trial and the case was accordingly withdrawn from bankruptcy court. The district court subsequently granted Dollar's summary judgment motion on its breach of contract claims and dismissed the remainder of the claims as moot.

Zebedee appeals, claiming that there remain genuine issues of material fact as to whether the parties intended Zebedee to repay the advances in the absence of any corporate earnings, and whether the parties intended Zebedee to pay for the Bra–Con shares issued in his name. Dollar cross-appeals the district court's dismissal of its counts alleging breach of fiduciary duty and conversion. Dollar seeks to litigate these claims in order to preserve a final judgment in the event Zebedee declares bankruptcy, because recovery under those counts will be nondischargeable in bankruptcy, unlike recovery under a breach of contract claim.

Because Zebedee has failed to rebut Dollar's summary judgment motion regarding Zebedee's liability for both the advances and the share purchase, and because we reject Dollar's contention that certain potentially nondischargeable claims must be litigated at the district court level at this time, we affirm, in part, the decision of the district court. We reverse only the district court's decision not to accord Zebedee credit for a $27,757 partial repayment of his Bra–Con share purchase debt.

## II.

■ Zebedee argues that the $115,296.64 in advances from Dollar was only to have been offset against year-end corporate earnings in the same way that prior advances were only offset against year-end bonuses. He contends that the board of directors never discussed what would happen in years in which profits were not made. For this reason, he asserts that a factual issue exists whether he had an obligation to repay the money out of personal funds if the company was unable to funnel profits back to the shareholders.

■ Summary judgment is appropriate when the moving party shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party (Zebedee)." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Zebedee "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added), and, in

so doing, he must "do more than simply show that there is some metaphysical doubt as to the material facts," in question. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. The "new era" of summary judgment analysis requires the district court to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. We review the district court's grant of summary judgment on a *de novo* basis. *E.E.O.C. v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990).

The only evidence tendered by either party supports the conclusion that Zebedee was impliedly obligated to repay the $115,296.64, regardless of Dollar's financial situation. Amos Winsand, a fellow shareholder and director of Dollar, testified that the entire Dollar board was under the impression that Zebedee was responsible for repaying the borrowed money, and that Zebedee would have to repay this money out of personal funds if such a need arose. William Diehl, Dollar's chief financial officer, confirmed Winsand's testimony as he too stated that based on communications with Zebedee and other board members, Zebedee was obligated to return the money. *See In re Heiler's Estate*, 288 Mich. 49, 284 N.W. 641 (1939) (court recognized implied contractual obligation to repay loan).

Mere allegations that an unanticipated set of circumstances was never discussed do not create a disputed factual issue with regard to whether Zebedee was obligated to repay the $115,296.64. Zebedee never alleges that there were meetings or discussions during which he was led to believe that he could keep the $115,296.64 if the company made no profits, nor does he allege that documents exist that would give rise to such an understanding. Having already testified that he, and the other Dollar shareholders, never contemplated a situation where the company would be unable to turn a profit, Zebedee cannot now testify that there was some agreement or tacit understanding that he would be relieved of the responsibility to repay the $115,296.64 debt if the company was unable to produce a profit.

To avoid a summary judgment dismissal, Zebedee also argues that the district court misinterpreted a controlling line of cases holding that absent an agreement to the contrary, terminated salesmen are not obligated to repay advances that are supposed to be set off against future commissions or earnings. *Agnew v. Cameron*, 247 Cal. App.2d 619, 55 Cal.Rptr. 733 (1967); *Valoco Building Products, Inc. v. Chafee*, 231 A.2d 101 (Conn. Cir. Ct.1966). Zebedee argues that since the $115,296.64 can be characterized as an "advance," because it was recorded as such in Dollar's books, as opposed to a "loan," he deserves the protection afforded by this line of cases.

The rule in these cases protects salesmen who spend advanced money in pursuit of future sales but are terminated before these sales come to fruition. These advances represent an investment made by the employer seeking to increase sales, and the courts have found no justifiable reason to shift the cost of that investment onto the salesmen's shoulders.

> [T]he employee's undertaking is in the nature of a joint enterprise with the employer, the main object of which is the furtherance of the employer's business, and it is not to be assumed that the employee, in furnishing his time and ability, likewise assumes all the risk.

*Agnew*, 55 Cal.Rptr. at 736.

As did the district court, we hold this line of cases to be inapposite. No "joint-enterprise" or mutual undertaking exists where the money is provided on an *ad hoc* basis and used for purely personal purposes, and there is no reason why this situation implicates the mutual sharing of risk which undergirds the policy behind the aforementioned line of cases. This line of cases, predicated on the "superior bargaining power of the employer in contracting with an agent or employee," *id.*, certainly does not apply where the president and chief operating officer, who is not in a subservient bargaining position, receives personal funds, upon his own directive, on an *ad hoc* basis. The line of cases cited by Zebedee is, therefore, irrelevant, regardless

of whether the $115,296.64 is characterized as a "loan" or "advance."

Zebedee is unable to rebut the testimony of Winsand and Diehl, which amply supports an implied obligation to repay the funds regardless of the company's financial condition. To survive defendants' summary judgment motion, Zebedee must, at the very least, show that a "rational trier of fact could find for [Zebedee]." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Zebedee has failed to convince this court that he can surpass such a hurdle, and we therefore affirm the district court's grant of summary judgment on this issue.

### III.

Zebedee next argues that there remain genuine issues of material fact regarding whether he is obligated to repay Dollar $60,-900 for the purchase of 3,045 shares of Bra-Con stock issued in his name.[1] Zebedee asserts that: (1) he is under no obligation since the stock subscription agreement did not conform to the requirements of Delaware law, Bra-Con's state of incorporation, and (2) he was never actually a shareholder in Bra-Con as he never received or accepted the shares and therefore could not be obligated to compensate Dollar for the stock purchase.

■ Whether the subscription agreement conforms to Delaware law is irrelevant to whether Zebedee is obligated to repay Dollar for having loaned Zebedee, through Evergreen, the money to purchase the stock. Dollar is not attempting to enforce a subscription agreement; it is only attempting to enforce Zebedee's implied contractual obligation to repay the full amount for the shares issued in Zebedee's name. Thus, it does not matter, for the purpose of determining Zebedee's implied contractual obligation, whether the subscription agreement complied with specifics of Delaware law.

■ Both the record and Zebedee's actions refute Zebedee's contention that he never received or accepted shares of stock in Bra-Con and was, therefore, not the rightful owner of 3,045 shares of Bra-Con stock. Ze-

bedee attended shareholders meetings and signed an "Action by Unanimous Consent in Writing of the Stockholders" in his capacity as both the Dollar Corporation representative and as a minority shareholder. Zebedee also voted the shares that he now purports never to have received or accepted. *See Drob v. National Memorial Park, Inc.*, 41 A.2d 589, 598 (Del.Ch.1945) (voting of shares is an incident of legal ownership). Having so acted, Zebedee cannot now contend that he was never a shareholder in Bra-Con and thus has no obligation to repay the money used to purchase stock in his name.

The testimony of William Diehl confirms that Zebedee was, in fact, a minority shareholder of Bra-Con. The following entry in the consolidated financial statement for Dollar and Bra-Con drafted by Coopers & Lybrand corroborates this testimony:

> 25 percent of Bra-Con was sold to existing shareholders of [Dollar]. Stock subscriptions receivable of $124,000 were due as of August 31, 1987, from minority shareholders.

The $124,000 "due ... from minority shareholders" is broken down in a document entitled "Consent of Directors in lieu of Organizational Meeting of June 18, 1987," signed by William Zebedee, showing $60,900 to be Zebedee's obligation. In addition, an individual stock certificate was prepared in Zebedee's name and is being held by Dollar until receipt of full payment from Zebedee, evidencing Dollar's understanding that Zebedee was the owner of the shares and that Zebedee was obligated to repay the money.

■ We uphold the district court's determination that Zebedee impliedly agreed to repay $60,900 for the purchase by Dollar, through Evergreen, of 3,045 shares of stock issued in Zebedee's name. The facts indicate that Zebedee was, as he acted, the rightful owner of 3,045 shares of Bra-Con stock, and Zebedee has failed to present an argument that could persuade a rational trier of fact that he, as the rightful owner of these shares, is not obligated to repay the purchaser.

---

1. The actual purchase of Bra-Con stock was made by Evergreen Corporation, a subsidiary

established by the Dollar Corporation board for the sole purpose of purchasing Bra-Con stock.

An issue remains with regard to $27,757 that was credited by Dollar as a partial repayment of this loan. Zebedee argues, consistent with his disclaimer of ownership of Bra–Con stock, that the $27,757 was a capital contribution and not a partial payment of his debt, and that it was error for Dollar to credit it as a partial repayment. Zebedee asserts, however, that in the event we deem him responsible for repaying the $60,900, it is only fair that he receive the $27,757 credit toward repayment.

We agree. We see no reason why Zebedee should be treated any differently than other Board members whose Bra–Con debts were reduced by their respective "capital contributions" made at the same time as Zebedee's. We find Zebedee is therefore entitled to $27,757 credit against the $60,900 which Dollar had advanced him for purchase of the stock.

### IV.

 Dollar appeals the district court's dismissal of counts I and IV (breach of fiduciary duty) and count V (conversion), and requests the right to litigate these claims in the district court even if we affirm that court's grant of summary judgment on the breach of contract claim. Dollar makes this request because a judgment for breach of contract awarded by the district court is dischargeable in bankruptcy, whereas a judgment for breach of fiduciary duty or conversion is not. Dollar seeks to litigate the fiduciary duty and conversion claims so as to preserve the final judgment in the event that Zebedee declares bankruptcy.

 Dischargeability determinations were vested in bankruptcy courts by the 1970 Amendments to the Bankruptcy Act. In so doing, Congress intended "to take the determinations governed by 11 U.S.C. § 523(c) away from state courts and grant exclusive jurisdiction in the bankruptcy courts." *Spilman v. Harley,* 656 F.2d 224, 226 (6th Cir. 1981) (citations omitted).

 Bankruptcy courts, in determining whether or not debts are dischargeable, are not bound by an earlier court's administrative dismissal of a claim; these courts have both the authority and jurisdiction to determine, in an independent proceeding, whether or not conditions for dischargeability have been met. *Id.* at 227. Should Zebedee declare bankruptcy in the future, the dischargeability of his debt to Dollar will, therefore, not be affected by the district court's administrative dismissal of counts I, IV, and V as moot.

Accordingly, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED to the district court for further proceedings consistent with this opinion. Although we have held that Zebedee is entitled to a credit of $27,757 not reflected in this district court judgment appealed from, appellee is still awarded costs, having prevailed substantially in this appeal.