**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SDJ INSURANCE AGENCY, L.L.C.,

    Plaintiff-Appellant,

STEVE JARVIS,

    Plaintiff-Counter-Defendant-
    Appellant,

v.

AMERICAN NATIONAL
INSURANCE COMPANY,

    Defendant-Appellee,

AMERICAN NATIONAL PROPERTY
AND CASUALTY COMPANY,

    Defendant-Counter-Claimant-
    Appellee.

No. 00-1441

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 99-B-578)**

Mark K. Osbeck of Yates & Leal, LLP, Denver, Colorado (Sandra Z. Brown of
Reinhart, Boerner, Van Deuren, Norris & Rieselbach, P.C., Denver, Colorado,
with him on the briefs), for Appellants.

Perry L. Glantz of Holland & Hart, LLP, Greenwood Village, Colorado, and Mark
E. Haynes of Pryor, Johnson, Montoya, Carney & Karr, P.C., Englewood,
Colorado (Arnold R. Thomas of Holland & Hart, LLP, Greenwood Village,

Colorado, and Robert W. Carney of Pryor, Johnson, Montoya, Carney & Karr, P.C., Englewood, Colorado, with them on the brief), for Appellees.

---

Before **TACHA**, Chief Judge, **McKAY** and **ANDERSON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Appellants SDJ Insurance Agency and Steve Jarvis appeal the United States District Court for the District of Colorado's grant of summary judgment pursuant to Rule 56 to the Appellees on Appellants' breach of contract claim. Appellants also challenge the district court's grant of summary judgment to American National Property and Casualty (ANPAC) on ANPAC's counterclaim for the repayment of advances made by ANPAC to SDJ Insurance Agency.

## I. Introduction

Mr. Jarvis signed an agency agreement with American National Insurance Company (ANICO) on December 30, 1997. Subsequently, on January 2, 1998, Mr. Jarvis entered into an exclusive agency agreement with ANPAC. Both contracts envisioned that either party could terminate the agreement unilaterally by giving written notice to the other at least thirty days prior to the date fixed for termination. The ANPAC Agent Agreement also permitted ANPAC to terminate Mr. Jarvis' binding privileges without notice.

On January 14, 1998, Mr. Jarvis and ANPAC signed an Agent Advance Agreement (AAA). Pursuant to this agreement, ANPAC advanced SDJ $18,000 a month to enable Mr. Jarvis to meet the expense of establishing insurance offices. After signing the contracts, Mr. Jarvis opened insurance offices in Colorado Springs, Castle Rock, Bennett, and Parker, Colorado, to facilitate the sale of ANPAC and ANICO policies. ANPAC advanced SDJ a total of $108,000 under the AAA.

ANPAC terminated Mr. Jarvis' agreement in a letter dated June 30, 1998. While termination was not effective until August 5, 1998, ANPAC immediately withdrew Mr. Jarvis' ability to bind new business. After termination, Appellants brought suit for breach of contract in Colorado state court. Appellees removed the case to the United States District Court for the District of Colorado and brought a counterclaim for the repayment of advances made to SDJ. Appellees moved for summary judgment on Appellants' breach of contract claim and Appellees' counterclaim. The district court granted the Rule 56 motions; Appellants appealed to this court.

## II. Choice of Law

As a preliminary matter, we must determine which state's law applies to the current dispute. The Agency Agreement specifically states, "[T]he validity, construction, and performance of this Agreement shall be controlled by and

construed under the laws of the State of Missouri." Aplt. Rec. at 84. Colorado applies the law of the state "chosen by the parties unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern." Hansen v. GAB Bus. Serv., Inc., 876 P.2d 112, 113 (Colo. Ct. App. 1994). Because neither of the exceptions set forth in Hansen are present here, we would normally apply Missouri law to this appeal.

However, neither party argued in the district court that Missouri law applied. Furthermore, Appellants' argument on appeal that Missouri law should apply was equivocal and limited to a footnote in Appellants' brief. See Aplt. Br. at 9. Because the parties failed to argue that Missouri law applied at the district court, that issue has been waived. See Mauldin v. Worldcom, Inc., 263 F.3d 1205, 1211-12 (10th Cir. 2001) (holding that weak protest against application of Texas law amounted to waiver of argument that Nebraska law should apply). Accordingly, we apply Colorado law to this appeal.

## III. Discussion

There are two issues for us to resolve on appeal. The first issue is whether the district court erred in granting summary judgment to Appellees on Appellants' breach of contract claim. The second issue is whether the district court erred in granting summary judgment on Appellees' counterclaim that, under their contracts

-4-

with Appellants, Appellees could hold Mr. Jarvis personally liable for the repayment of advances Appellees made to SDJ.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Id.

### A. Breach of Contract Claim

The parties agree that the ANPAC Agent Agreement provides that either party may terminate the agreement "without cause at any time by giving written notice to the other party at least thirty (30) days prior to the date fixed for termination." Aplt. App. at 85. The ANPAC Agent Agreement also specifically reserves the right of ANPAC to "withdraw or limit the Agent's authority to bind risks either in whole or in part." Id. at 84. Appellants do not contest that ANPAC gave them the requisite notice prior to unilaterally terminating the agreement. Despite the contract's explicit terms, Appellants challenge the district court's grant of Appellees' motion for summary judgment on their breach of contract claim on two grounds.

First, Appellants argue that they had been orally promised two years to meet ANPAC's production requirements before ANPAC would terminate the

agent agreement. Appellants assert that because of various statements made to them by ANPAC's representatives, ANPAC should be equitably estopped from exercising its privilege to unilaterally terminate the agreement with thirty days notice. Appellants specifically waived any promissory estoppel argument and are precluded from asserting a promissory estoppel claim on appeal. See Aplt. Reply Br. at 11. Instead, Appellants choose to pursue their claim as an equitable estoppel claim.

"While the doctrine of promissory estoppel is applicable to promises, the doctrine of equitable estoppel is applicable to misstatements of fact." Board of County Comm'rs v. DeLozier, 917 P.2d 714, 716 (Colo. 1996). Appellants' equitable estoppel claim is essentially a tort claim for misrepresentation of facts. Under Colorado law, equitable estoppel claims consist of two elements. "[T]he party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must rely on the other party's conduct with resultant injury." Committee for Better Health Care v. Meyer, 830 P.2d 884, 891-92 (Colo. 1992). Plaintiffs who premise their equitable estoppel claims on promises relating to future events face an additional requirement of proving that the party making the future promise had no present intent to fulfill the promise. See DeLozier, 917 P.2d at 716; see also Mehaffy, Rider, Windholz & Wilson v.

Central Bank Denver, N.A., 892 P.2d 230, 237 (Colo. 1995); High Country Movin', Inc. v. U.S. West Direct Co., 839 P.2d 469, 471 (Colo. Ct. App. 1992).

Appellants argue that Jeffrey Johnson, a multiline general agent for ANPAC and ANICO who recruited Mr. Jarvis on ANPAC's and ANICO's behalf, promised Mr. Jarvis that he would be given two years to reach required production levels despite the contract's clear language permitting either party to terminate the relationship at will. This two-year promise was allegedly affirmed by other individuals acting on ANPAC's behalf. See Aplt. Reply Br. at 13. In defending Appellants' breach of contract claim, Appellees rely on the contract's unambiguous provision that either party can terminate the parties' relationship at anytime with thirty days notice.

The district court rejected Appellants' reliance upon this allegation as sufficient to create an equitable estoppel claim because Appellants failed to prove, as required under Colorado law, that Appellees had no intention of keeping their promise to allow Appellants two years to reach required production levels when that promise was made. See DeLozier, 917 P.2d at 716. We agree. Appellants' failure to submit any evidence showing Appellees' present lack of intent to fulfill its promises of future conduct is fatal to Appellants' equitable estoppel claim.

Appellants' second basis for their breach of contract claim is that Appellees

-7-

breached the Agent Agreement by immediately revoking Appellants' ability to bind new business. Appellants argue that the provision regarding Appellees' ability to withdraw Appellants' binding authority is ambiguous and that the better reading of the contract makes this clause subject to the thirty-day notice requirement "since total withdrawal of binding authority . . . destroys the agent's ability to write new business." Aplt. Reply Br. at 14.

The district court correctly determined that Appellees' ability to withdraw binding authority was unambiguous. Appellees specifically reserved the right under the Agent Agreement to "withdraw or limit the agent's authority to bind risks either in whole or in part." Aplt. Rec. at 96. As the district court indicated, "[n]otably absent from this provision is any notice requirement." Id. at 45. While the ability to immediately bind a policy makes the sale of insurance easier, the withdrawal of that ability does not make the sale of policies impossible. In fact, many relationships between insurance agents and insurers begin without an agent possessing the ability to immediately bind insurance policies. We reject Appellants' contention that Appellees breached the Agent Agreement by immediately withdrawing binding authority.

## B. ANPAC'S Counterclaim

ANPAC advanced to SDJ $108,000 pursuant to the AAA. Appellants allege that the purpose of the advances was to enable Appellants to open offices

in several Colorado towns to facilitate the sale of Appellees' policies. At the time of termination, the district court found that Appellants had not yet repaid $97,709.74 of the advances made to them. Appellees counterclaimed for the unpaid advances arguing that the AAA obligated Mr. Jarvis to repay the outstanding balance from his personal assets. The district court granted summary judgment to the Appellees on their counterclaim.

Colorado law, similar to the law of the majority of the states, has adopted the principle that "[r]egular advances to an agent are presumed to be in the nature of compensation. In the absence of an express or implied agreement to the contrary, advances in excess of earned commissions are not recoverable." Slabodnik v. Travelers Ins. Co., 489 P.2d 604, 605 (Colo. Ct. App. 1971); see also 32 A.L.R.3d 802 (1970). Therefore, absent a contractual provision expressly holding Mr. Jarvis personally liable for advances, Appellees must show that Mr. Jarvis, by his conduct, exhibited an intent to be held personally liable for the repayment of the advances. See Argonaut Builders, Inc. v. Dare, 359 P.2d 366, 368 (Colo. 1961) ("intent of the parties[] gathered from all of their dealings . . . lead[s] to the contrary conclusion . . . that the defendant should be liable to the extent that the charges exceeded the payments to him").

The Agency Agreement as amended by the AAA contains two provisions discussing the repayment of advances. The first provision, contained in the AAA

itself, states:

> This Agent Advance Agreement may be terminated at anytime by the Company with or without cause. The termination shall be effective immediately upon the Company giving written notice to the Agent. Said Agreement shall automatically be terminated when the advance payment of compensation deficit is repaid in full.

Aplt. App. at 101. This provision in no way holds Mr. Jarvis personally liable for advances left owing after termination. Instead, this provision simply indicates that Appellees could terminate the agreement at anytime and that the agreement would terminate on its own volition once the advances had been repaid in full. Certainly once the entire amount of the advances had been deducted from commissions Appellants earned, the need for the continued payment of advances ceases.

The district court based its grant of summary judgment on Section C(7) of the Agent Agreement, which reads in part, "You agree to repay to the Company, on demand, any unearned commissions and all other compensation received by you for or with respect to premiums or payments returned to policy or contract owners by the Company for any reason." Aplt. App. at 82. The district court held this repayment provision contained two separate obligations. According to the district court, the Appellants agreed to pay upon demand any unearned commissions, which would include advances. Appellants, per the district court, also agreed to reimburse Appellees for all other compensation received from

-10-

premiums eventually returned to policyholders.

Appellants contest this reading of the repayment provision of the contract. Appellants argue that the entire provision refers only to premiums or payments returned to policyholders by Appellees for any reason and has no application to the repayment of advances. Under Appellants' interpretation, Appellants agreed to return the commissions they earned but were no longer entitled to because all or part of the policy premium had been returned to policyholders by Appellees. Additionally, Appellants agreed to return any other compensation (such as bonuses, vacation trips, points towards retirement plans, etc.) given the Appellants by Appellees based on premiums later returned to policyholders. The district court rejected Appellants' view of the repayment provision holding that such a reading of the contract "would read the first clause out of the contract and render it surplusage." Aplt. Rec. at 48.

Absent a tortured reading of the plain language of the commission repayment provision, we cannot read the contract in the manner indicated by the district court. The phrase "received by you *for or with respect to* premiums or payments returned to policy or contract owners by the Company" modifies the Appellants' duty to pay back any unearned commissions and all other compensation. Advances made to SDJ were unrelated to any premium or payment returned to policy or contract owners by Appellees.

At most, the repayment of commissions contract provision is ambiguous and should be interpreted against the Appellees as the contract's drafters. The parties could have easily provided that Mr. Jarvis assume personal liability as a borrower by so stating in the contract. Considering the contract as a whole, it does not appear that the parties intended to hold Mr. Jarvis personally liable for the advances made.

While our reading of the contract precludes the grant of summary judgment to Appellees on their counterclaim, it does not foreclose the possibility that Appellees could ultimately prevail. As noted previously, Colorado law provides an exception to its general rule if Appellees can prove that Mr. Jarvis, by his conduct, exhibited an implied personal liability to pay. Upon remand, the Appellees should be permitted to put forth any evidence they may have regarding Mr. Jarvis' conduct that would imply assumption of a personal liability to repay.

## IV. Conclusion

Reviewing the evidence in a light most favorable to the non-moving party, we find that there are no genuine issues of material fact as to Appellants' breach of contract claim, and we **AFFIRM** the district court's grant of summary judgment to Appellees on that claim. However, we **REVERSE** the district court's decision regarding the repayment of advances and **REMAND** for further disposition in accordance with the principles set forth in this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**