**Eric TORNBERG, Plaintiff,**

v.

**BUSINESS INTERLINK SERVICES, INC., Defendant.**

**No. 01–CV–71303.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 5, 2002.

---

John R. Runyan, Jr., Sachs Waldman, Detroit,MI, Earle I. Erman, Erman, Teicher, Southfield, MI, for plaintiff.

James K. Miller, Blanco Assoc., Troy, MI, Orlando L. Blanco, Blanco & Associates, Troy, MI, for defendant.

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION TO AMEND ANSWER AND PARTIALLY GRANTING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT**

COHN, District Judge.

## I. Introduction

This is an employment dispute under the Family Medical Leave Act, 29 U.S.C. § 2617(a)(2). Plaintiff Eric Tornberg (Tornberg) is suing his former employer, defendant Business Interlink Services, Inc. (BIS), claiming that Business Interlink failed to maintain his coverage under a group health plan during his qualifying medical leave for the months of May, June, and July 1999. There are three motions before the Court.

The first motion is Tornberg's motion for partial summary judgment on the issue of liability only—requesting a ruling that BIS violated the FMLA for its failure to maintain his coverage under its group health plan for the duration of his 1999 medical leave. Also before the Court is BIS's motion to amend its answer to include a counterclaim for breach of contract. The Court heard argument on these motions on September 4, 2001, at which time it directed Tornberg to file a paper detailing the relief and damages he seeks should the Court find that BIS violated the FMLA in light of the fact that BIS has paid Tornberg's medical bills. Tornberg responded by filing a motion for entry of judgment, the third motion before the Court, requesting over $50,000.00 in damages, interest, and attorney fees.

For the reasons which follow, Tornberg's motion for partial summary judgment's GRANTED and BIS's motion to amend is DENIED. Tornberg's motion for entry of judgment is GRANTED to the extent that he seeks declaratory relief that BIS violated the FMLA and DENIED to the extent that he seeks monetary relief other than reasonable attorney fees and costs. However, the request for attorney fees and costs must be decided on a separate motion.

## II. Background

The material facts as gleaned from the parties' papers follow:[1]

Tornberg was employed by BIS as a truck driver from October 27, 1997 until August 13, 1999. BIS provides contract labor in the trucking and transportation industries throughout Michigan, Ohio, Indiana, and Kentucky. BIS employs approximately 400–500 truck drivers, mechanics, warehousemen, and clerical employees in the metropolitan Detroit area which it leases to various customers.

Tornberg's supervisor while employed by BIS was Rick Dipple. In early 1999, Tornberg was assigned to drive general freight.

During his employment with BIS, Tornberg was a participant in the BIS Employee Benefit Plan ("the plan"). Among other benefits, the plan reimbursed eligible employees for medical expenses which they incurred. Tornberg paid approximately $22.64 by payroll deduction each week to cover his share of the cost of participating in the plan.

On Friday, May 21, 1999, while returning to Detroit from a general freight run to Milwaukee, Tornberg experienced

---

1. Neither party followed the Court's motion practice guidelines. Although Tornberg did submit a statement of material facts not in dispute, BIS did not respond with a counter- statement. Neither party provided highlighted exhibits or provided highlighted copies of controlling authority, although Tornberg did attach his most relevant case to his motion.

back and abdominal pain. The next day, Tornberg went to McClaren Regional Medical Center where a physician diagnosed him with a kidney stone, a condition which he also had back in January of that year.[2] Tornberg attempted to work on Monday, May 24, 1999, but was unable to do so as a result of the pain. Tornberg then called Dipple and verbally requested time off because of his kidney stone. BIS apparently granted him the time off. Neither Tornberg nor BIS mentioned the FMLA in giving Tornberg time off. Tornberg underwent treatment for his kidney stone in June.

In late June, Tornberg called BIS Director of Operations, Salvatore Manzo, to make arrangements to pay his premiums while off work. Manzo then prepared and sent Tornberg a Payroll Authorization Form which stated that Tornberg agreed to have $85.75 deducted each week from his paycheck for a month, for a total of $343.00. Apparently, BIS required its employees to pay the *entire* cost of the premium while they were off work. This deduction was to represent the July 1999 premium. Tornberg signed and returned the form. It is not clear whether Tornberg paid the entire premium in May or June of 1999, but Tornberg did not pay the July 1999 premium.

Tornberg was released to return to work on July 26, 1999 and called Dipple. Dipple was unable to find any work for Tornberg, and after Tornberg called him several times, Dipple told him to look for another job, which Tornberg had already been doing.

On August 13, 1999, after Tornberg obtained a job with Panther II Transportation, Inc., Tornberg called Manzo[3] to make arrangements to pay his premium for the

time he was off work, which was apparently the $343.00. Tornberg also apparently resigned that day. Manzo told him that he could have approximately 30 days to make the payment, as Tornberg would not get a paycheck for the first three weeks of his new job.

On August 27, 1999, however, Manzo called Mid–America Associates, apparently BIS's insurance carrier and/or administrator, and informed them to terminate Tornberg's coverage retroactive to *May 31, 1999.* BIS never notified Tornberg of the call. Tornberg first learned of BIS's decision in September 1999 after receiving phone calls from medical providers saying that his coverage was rejected by the carrier.

Tornberg then sued BIS for violation of the FMLA. BIS answered the complaint and has now moved to amend its answer to assert a counter-claim for breach of contract based on Tornberg's failure to honor the Payroll Authorization Form to pay the $343.00.

### III. Legal Standards

#### A. Motion for Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagree-

---

2. It is not clear from the record whether BIS paid for any of Tornberg's medical expenses as a result of this kidney stone, or whether Tornberg was off work as a result of it.

3. Manzo said this conversation took place in the end of July 1999, but could not be sure. Tornberg says it took place on August 13, 1999.

ment to require submission to a trier of fact or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995). Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir.2001).

### B. Motion to Amend Answer

Under Fed.R.Civ.P. 15(a), a party may amend their pleadings after 20 days "only by leave of court or by written consent of the adverse party; and leave to amend pleadings 'shall be freely given when justice so requires.'" The decision whether or not to permit the amendment is committed to the discretion of the trial court. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Estes v. Kentucky Util. Co.*, 636 F.2d 1131, 1133 (6th Cir.1980). This discretion, however, is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *See Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987) (citation omitted). In determining whether to permit amendment, some of the factors which may be considered by the district court are undue "delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Hageman v. Signal L.P. Gas, Inc.* 486 F.2d 479, 484 (6th Cir.1973). *See also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Delay by

itself is not sufficient to deny a motion to amend. *Hageman*, 486 F.2d at 484. *See also General Elec. Co. v. Sargent & Lundy* 916 F.2d 1119, 1130 (6th Cir.1990). Moreover, in denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986).

### IV. Analysis

#### A. Motion for Partial Summary Judgment

##### 1. Parties' arguments

Tornberg argues that there is no genuine issue of material fact that BIS violated the FMLA in terminating his benefits retroactively. Tornberg was an eligible employee under the FMLA and his leave of absence in May, June, and July 1999 was FMLA-qualifying. BIS violated the FMLA by unlawfully terminating his coverage effective May 31, 1999 and the violation is not excused by Tornberg's failure to make payroll deductions because such a deduction itself is a violation of the FMLA, and even if the payroll deduction was proper, BIS did not give proper notice of the consequences of not making payments timely. The FMLA also requires that BIS give notice to Tornberg prior to terminating benefits; it did not given such notice.

BIS responds that there are genuine issues of material fact as to whether BIS violated the FMLA. There is also a dispute as to the timing of the phone calls between Manzo and Tornberg regarding Tornberg's outstanding premium payments. BIS also notes that Tornberg filed the motion prior to the close of discovery. Tornberg's supervisor, Dipple, has not yet been deposed.

BIS also argues that there is a genuine issue of material fact as to whether BIS may recover the premiums from Tornberg because he did not return from medical leave. Tornberg did not pay the premi-

ums as he promised under the Payroll Authorization Form nor did he return to work. BIS agreed to have Tornberg pay the premiums from deductions from future paychecks, however, there were no future paychecks as Tornberg did not return to work. The only course of action BIS could take was to cancel Tornberg's coverage and BIS took no action to obtain payment from Tornberg until it was clear he did not intend to return to work.

BIS also argues that Tornberg does not have any damages relative to outstanding medical bills because BIS has recently negotiated Tornberg's medical bills and paid them. BIS says all of Tornberg's bills have been paid; Tornberg has no damages as a result of any alleged violation of the FMLA.

### 2. Analysis

#### a. FMLA in general

Congress enacted the FMLA in response to a perceived need to allow workers flexibility in scheduling time to deal with family and medical problems and the tensions created by the competing time demands of work and family. As the legislative history indicates:

> [p]rivate sector practices and government policies have failed to adequately respond to recent economic and social changes that have intensified the tensions between work and family. This failure continues to impose a heavy burden on families, employees, employers and the broader society. [This legislation] provides a sensible response to the growing conflict between work and family by establishing a right to unpaid family and medical leave....

**4.** Although BIS asserts that Tornberg's employment was "sporadic" and not "continuous," BIS does not argue that Tornberg was not covered under the FMLA because of this. Moreover, the FMLA regulations provide that

Family and Medical Leave Act of 1993, S.Rep. No. 103–3, 103rd Cong., 2nd Sess. 4 (1993), reprinted in 1993 U.S.Code Cong. & Ad. News 3, 6.

#### b. Coverage under the FMLA

To be eligible for FMLA leave, an employee must have been "employed (i) for at least 12 months by the employer with respect to whom leave is requested . . .; and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2). Employers covered by the FMLA include "(i) . . . any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year . . ." 29 U.S.C. § 2611(4). There is no serious dispute that Tornberg and BIS are both within the jurisdictional ambit of the FMLA–Tornberg has worked regularly[4] for BIS since 1997 and BIS regularly employs more than 50 employees. See 29 U.S.C. § 2611.

Moreover, Tornberg notified BIS of his need to be off work. Section 2612(e)(2)(B) requires an employee to provide notice to the employer, expressing his or her intention to take the leave of absence. In instances in which the need for leave is unforeseeable, notice is to be provided as soon as practicable, i.e., at least one or two days in advance of taking the leave. 29 C.F.R. § 825.302(b). Here, Tornberg called Dipple on the Monday that he was unable to return to work. Furthermore, Tornberg's statements to Dipple were sufficient to put BIS on notice

"the 12 months an employee must have been employed by the employer need not be consecutive months." 29 C.F.R. § 825.110(a)(1) and (b).

that his leave was covered under the Act. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303 (1995). *See also Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 763 (5th Cir.1995); *George v. Associated Stationers*, 932 F.Supp. 1012, 1016 (N.D.Ohio 1996). In *Manuel,* the court rejected the contention that the FMLA requires employees to invoke the Act by name, and to specific subparagraphs therein, stating, "These are workers, not lawyers." 66 F.3d at 763.

■ The obligation then shifts to the employer to obtain any additional required information through informal means. 29 C.F.R. § 825.303(b). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, and to give notice of designation to the employee." *Price,* 117 F.3d at 1026 (citing 29 C.F.R. § 825.208(a)).

Here, Tornberg informed BIS of his need for leave, citing his kidney stone as the reason. At that point, the burden shifted to BIS to designate the leave as FMLA-qualifying, and to obtain additional

information to make that determination, if necessary. BIS claims they it informed Tornberg that he had to supply medical documentation, but BIS never followed up on the request. Moreover, it is undisputed that at the time of Tornberg's leave, BIS did not have a written or unwritten leave of absence policy, nor did BIS provide Tornberg with written notice detailing his obligations regarding leave and the consequences for failing to supply any required information, all of which is required under the FMLA.[5] Tornberg's statements to Dipple that he needed time off work because of his kidney stone put BIS on notice of the possibility his leave was FMLA-qualifying, which is all the Act requires of the employee.

■ It is also undisputed that BIS never informed Tornberg of his rights under the FMLA, such as his right to have his insurance maintained at the employer's expense during his leave. Perhaps if BIS had apprised Tornberg of his rights, as required by law, he would have provided requested medical documents to BIS to ensure that he would qualify for coverage under the FMLA. Presumably the regulations include these notification provisions

---

**5.** Section 825.305(a) allows a company to impose its own notice requirements: "An employer may require that an employee's leave ... be supported by certification issued by a health care provider of the employee...." However, § 825.305(a) states that when an employer requires certification issued by a health care provider, the "employer must give notice of a requirement for medical certification each time a certification is required ...." *See also, George,* 932 F.Supp. at 1016 ("If the company required medical certification in conjunction with a leave request, it was required to give notice of its demand to George.") (citing 29 C.F.R. § 825.305). Under applicable regulations, the notice from the employer must detail the specific expectations and obligations of the employee and explain any consequences of a failure to meet these obligations, 29 C.F.R. § 825.301(b)(1), including any requirement for the employee

to provide medical certification and the consequences of the failure of doing so, 29 C.F.R. § 825.301(b)(1)(ii). If a company's notification is conveyed via an employee manual, as in this case, the instrument must clearly incorporate information on FMLA rights and responsibilities and the employer's policies regarding the FMLA. 29 C.F.R. § 825.301(a)(1). More importantly, "an employer that fails to post the required notice cannot take any adverse action against an employee, including denying FMLA leave, for failing to furnish the employer with advance notice of the need to take FMLA leave." 29 C.F.R. § 825.300(b). *See Hendry,* 896 F.Supp. at 828 (the regulations provide that a non-posting employer is estopped from taking adverse action against an employee who fails to furnish the employer with advance notice of a need to take FMLA leave).

to ensure the employee has all of the information he or she needs to make an educated decision. Therefore, because BIS failed to inform Tornberg properly of his rights and obligations under the FMLA, Tornberg's failure to provide medical documentation does not preclude him from being covered under the FMLA.

■ Tornberg also says that there is no genuine issue of material fact that his leave was FMLA-qualifying. The FMLA permits employees "to take job-protected, unpaid leave ... for up to a total of 12 workweeks in any 12 months ... because the employee's own serious health condition makes the employee unable to perform the functions of his or her job." 29 C.F.R. § 825.100. The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves—

(A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11).

"Continuing treatment" includes treatment two or more times by a health care provider. 29 C.F.R. § 825.114. Under the regulations, "treatment" includes "examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.114(b). Here, Tornberg's kidney stone was a serious health condition as it required both inpatient care (an overnight stay in the hospital) and continuing treatment (placement of a urethral stent and undergoing a lithotripsy procedure to break up the stone as well as the recuperation time). Thus, Tornberg's leave was covered by the FMLA.

c. Liability under the FMLA

■ BIS, as was its apparent policy at the time, required Tornberg to pay the entire cost of his premiums while on leave.

In order to accomplish this, BIS sent Tornberg a Payroll Authorization Form. However, BIS failed to maintain Tornberg's coverage under the plan for the duration of his leave and terminated his coverage retroactively. Tornberg says this is a *per se* violation of the FMLA. Section 2614(c)(1) of the FMLA provides:

during any period that an eligible employee takes leave under section 2612 of this title, the employer shall maintain coverage under any "group health plan" (as defined in section 5000(b)(1) of Title 26) for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave.

Because the Court has already found that Tornberg's leave was covered by the FMLA, the question is whether BIS violated the FMLA. The answer is yes. The FMLA clearly states that an employer must provide health care coverage during FMLA leave. Here, it is undisputed that BIS did not do so. *See Stubl v. T.A. Systems, Inc.*, 984 F.Supp. 1075, 1089 (E.D.Mich.1997).

Moreover, BIS's argument that it did not violate the FMLA and/or there is a genuine issue of whether it did because of Tornberg's failure to pay his premiums during the time he was off work lacks merit. First, BIS's policy of making the employee pay the entire premium while off work violates the FMLA's requirement that coverage be maintained at the same conditions if the employee was still working. When working, Tornberg only had to pay his portion of the premium. An employer may not lawfully impose greater premium costs upon an employee on an FMLA-qualifying leave than it does upon those employees actively at work. *See Stubl, supra.* Even if BIS's policy was permissible, it would have to provide Torn-

berg with notice of the policy and the consequences for failing to make payments on a timely basis. *See* 29 C.F.R. §§ 212(a)(1), 301(b)(1)(iv). BIS did not do this, but instead retroactively terminated Tornberg's medical coverage without notice. Thus, Tornberg's failure to make premium payments does not excuse BIS's coverage obligations.[6]

■ BIS's argument that summary judgment is not proper because discovery was not yet closed also lacks merit. First of all, Tornberg's motion was filed in February; BIS filed a response in April. Since then, BIS has made no attempt at discovery. Second, the undisputed facts clearly show that BIS's actions violated the FMLA. Further discovery is highly unlikely to lead to a contrary result.

Finally, BIS's argument that summary judgment is improper because Tornberg has no damages also fails. Tornberg is only seeking summary judgment as to liability; whether or not Tornberg has suffered any damages is not at issue.

Accordingly, Tornberg's motion for partial summary judgment on liability is GRANTED.

### B. Motion to Amend Answer

■ BIS seeks to amend its answer to include a breach of contract claim against Tornberg. The so-called "contract" is the Payroll Authorization Form which Tornberg signed in July of 1999 and agreed to have $343.00 deducted from his paycheck for premiums. Tornberg argues that BIS's request should be denied because it is untimely, prejudicial and the claim fails to state a claim upon which relief may be granted, *i.e.* amendment would be futile.

BIS's motion lacks merit. As explained above, BIS's policy of requiring an employee to pay the entire premium while off work, which is memorialized by Payroll Authorization Form, violates the FMLA. Moreover, while FMLA regulations provide that an employer may obtain reimbursement of the amount of premiums it paid while the employee was on FMLA-qualifying leave, BIS did not make any premium payments for Tornberg while he was off work-it terminated his coverage as of May 1999. BIS's position that its unlawful policy gives rise to a contract claim, and its argument that this case is as much breach of contract case where they are the injured party as it is a FMLA case is patently frivolous.

### V. Motion for Entry of Judgment

#### A. Parties' arguments [7]

Having found that BIS violated the FMLA, the question becomes what damages are available to Tornberg, particularly in light of the fact that BIS negotiated and paid Tornberg's medical bills.[8] Tornberg filed a motion for entry of judgment,

---

6. FMLA regulations do provide that where an employee fails to return to work following FMLA-qualifying leave, the employer may recover its share of the premiums paid under certain circumstances. However, this obligation on the part of the employee is a "debt" and does not alter the employers responsibilities for health care benefit coverage. See 29 C.F.R. § 825.214(a) and (f). There is nothing in the FMLA or its regulations permitting an employer to retroactively, and without notice, terminate health care coverage for an employee who fails to return to work following FMLA-qualifying leave.

7. Both Tornberg's motion and BIS's response contain several pages rearguing their positions regarding BIS's liability under the FMLA and whether or not Tornberg breached his contract with BIS. None of these arguments were necessary or responsive to the Court's direction at the hearing. The only purpose of Tornberg's motion for entry of judgment was for Tornberg to set forth and justify his claimed damages.

8. Apparently BIS was able to negotiate with the medical providers to accept $7661.15 as full satisfaction of the total of $19,022.80 in medical bills.

requesting declaratory relief (that BIS violated the FMLA) and damages. The damages Tornberg seeks are (1) lost wages from July to August 1999, (2) interest on the lost wages, (3) interest on the medical bills from the time that the expenses were incurred until the time that they were finally paid by BIS, (4) liquidated damages in the same amount of lost wages and interest due to BIS's bad faith violation of the FMLA, and (5) costs and attorney fees. BIS argues that Tornberg is not entitled to damages and/or his amounts are unreasonable. BIS also argues that it is entitled to damages in the form of reimbursement of the premiums Tornberg should have paid, including its attorney fees.

### B. Analysis

As an initial matter, BIS is not entitled to any damages arising out of Tornberg's alleged breach of their contract to pay premiums. As noted above, this claim lacks merit. The only issue is what damages Tornberg is entitled to receive for BIS having violated the FMLA.

29 U.S.C. § 2617(a) sets forth the damages a successful FMLA plaintiff may recover, providing in relevant part:

(a) Civil action by employees

(1) Liability

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected—

(A) for damages equal to—

(i) the amount of—

(I) **any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation;** or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

(ii) **the interest on the amount described in clause (i) calculated at the prevailing rate; and**

(iii) **an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith** and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, **such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively;** and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

. . . .

(3) Fees and costs

The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

(Emphasis added).

### 1. Lost wages

 Tornberg says he suffered $2,400.00 in lost wages from July 26, 1999 to August 13, 1999. BIS says he should not recover for lost wages because Tornberg never had any intention of returning to work and that Tornberg did not lose wages as a result of the FMLA violation. BIS's arguments lacks merit. Although Tornberg was not able to return to work with BIS, that was not the result of the FMLA violation, but rather due to a num-

ber of factors unrelated to the FMLA violation. BIS also never terminated Tornberg; Tornberg resigned.

However, Tornberg's request for lost wages is not appropriate. The FMLA violation was BIS's failure to pay Tornberg's premiums and terminating his medical coverage. This was not a case where BIS refused to return Tornberg to work or terminated him because he was on FMLA qualifying leave, but rather a case where BIS unlawfully made Tornberg responsible for his premiums while on FMLA leave and unlawfully terminated his medical coverage. Thus, any wage loss Tornberg suffered for those three weeks before Tornberg obtained new employment is not the result of BIS's FMLA violation. Accordingly, Tornberg is not entitled to lost wages or interest on the lost wages.

### 2. Medical expenses

Tornberg also claims damages in the amount of $729.30, representing the amount of interest on the medical bills from the time they were incurred until BIS finally paid him. This request is inappropriate. The fact is that BIS eventually paid Tornberg's medical bills. Allowing Tornberg to recover interest for medical bills that should have been paid, not to Tornberg, but to medical providers, would be a windfall.

### 3. Liquidated damages

The parties spend a good deal of time arguing whether BIS acted in good faith in requiring Tornberg to pay his medical premiums and in terminating his coverage, it is not necessary to address this issue. Because Tornberg has no claim for lost wages, he cannot recover liquidated damages or interest. *See* 29 U.S.C. § 2617(a)(1)(A)(ii)-(iii).

### 4. Attorney fees

Tornberg requests $29,390.13 in attorney fees and costs. Tornberg is enti-

tled to recover his reasonable attorney fees and costs under the circumstances displayed in the record. In fact, these are his only recoverable damages arising out of BIS's FMLA violation.

In support of his request, Tornberg attached billing records from his lawyer to his reply brief. Although BIS filed a response to Tornberg's reply, they have not had an adequate opportunity to object to the claimed fees other than to state that the amount requested is unreasonable, which may well be the case. As such, Tornberg must file a separate motion for attorney fees and costs. To this end, the Court offers the following. Attorney fee petitions have the tendency to take on a life of their own. The Court has already spent a significant amount of time on this case and should not have to spend more time. The parties are therefore *strongly encouraged* to agree on a reasonable amount of attorney fees and costs and to submit a proposed final judgment consistent with this order. All of that can be done without prejudice to BIS's right to appeal should it chose to do so.

SO ORDERED.